STATE ex inf. Norman H. ANDERSON, Attorney General ex rel. Noah Weinstein, Judge, 21st Judicial Circuit, Relator,

v.

ST. LOUIS COUNTY, Missouri, Lawrence K. Roos, etc., et al., Respondents.

No. 52890.

Supreme Court of Missouri, En Banc.

Nov. 13, 1967.

Rehearing Denied Dec. 11, 1967.

Roberts P. Elam, St. Louis, for relator.

Joseph B. Moore, St. Louis County Counselor, Clayton, for respondents.

Norman C. Parker, St. Louis, Counsel for the St. Louis County Charter Commission, of counsel.

Edward E. Murphy, Jr., St. Louis, for amicus curiae.

HOLMAN, Chief Justice.

This original proceeding in the nature of quo warranto was instituted by the Attorney General at the relation of Hon. Noah Weinstein, Judge of the Juvenile Division of the Circuit Court of St. Louis County. The respondents are St. Louis County and various officials of said county whose duties involve the budget and civil service functions of the county.

Respondent St. Louis County is a county of the first class governed by a charter duly adopted pursuant to Article VI, § 18 (all constitutional references are to the

Constitution of Missouri 1945), V.A.M.S., in the year 1950. The charter provides for a County Council as the governing body of the county and it is given authority by ordinance "to designate the maximum number of assistants, deputies, clerks, and other persons who may be employed in all offices and departments of the county," and "to designate the maximum and minimum range of compensation of all other county employees." The charter also contained a provision for the establishment of a merit or civil service system for the appointment of all employees in certain departments of the county, including the Department of Public Welfare, and the Civil Service Commission was given authority to establish classification and compensation plans for said employees.

For many years St. Louis County has owned and maintained a Children's Building which contains the courtroom and offices for the judge of the juvenile court and offices for all personnel employed in both the administration and detention functions of the juvenile court. The building also contains living quarters, school rooms, and other facilities for the accomodation of an average child population of 32. The charter placed control of the Children's Building under the Welfare Commissioner, and since the adoption of the charter the employees of that building have been employed and paid under the merit system. On November 8, 1966, a charter amendment was adopted which, with certain exceptions not here relevant, provided that "the merit system is hereby extended to all other employees of the county."

St. Louis County has 15 divisions of circuit court, and Division No. 3 has been designated as the Juvenile Division of which relator is the judge. The juvenile court supervises a large volume of work, there having been a total of 7,396 referrals in the year 1966. There have been employed in carrying on the work of the juvenile court a juvenile officer who is also director of court services and commissioner of the welfare department. There are 73 other persons engaged in that work, 48 of whom were appointed by relator or his predecessors in office, who are engaged in administrative functions, and there are 25 employees who are associated with the detention functions of the court. The salaries of all of these employees are paid out of the general revenue fund of the county, except a statutory allowance of $4,250 which the state contributes to the salary of the juvenile officer.

In the fall of 1966 relator, as judge of the juvenile court, prepared and submitted to the budget officials of the county estimates for the requirements of the juvenile court for the year 1967. His requests totaled $1,130,044, of which $833,176 was for juvenile court administration, and $296,868 for maintenance and operation of the detention facilities. Reductions were made in these estimates by the budget officer and upon submission to the County Council the amount approved for the juvenile court was $639,892 for administration, and $219,907 for the detention facilities. It will be noted that more than $190,000 was deleted from the estimates of the juvenile court for administration, and more than $80,000 was deleted from the estimates for the detention facilities. One of the principal items deleted from the administration estimates was an amount for the salaries of 18 additional employees in that department. Likewise, a large item deleted from the detention estimate was an amount for the salaries of eight additional employees in that department. Also, the salaries of some 34 persons in the administration department had been increased by relator and the amounts of said increases were not allowed by the budget officer. None of the 25 persons serving in the detention department were given increases by relator, but all of those were given a 5% increase in salary by respondents, which increases were not authorized or consented to by relator.

The budget estimates of relator for the juvenile division were approved by the Circuit Court en Banc prior to submission to the budget officer. On December 20, 1966,

a certified copy of the order of the circuit court increasing the salaries here involved was delivered to the County Supervisor and various other county officials. Thereafter, the budget director advised relator that all juvenile court personnel was under the merit system by virtue of the charter amendment adopted November 8, 1966, and that accordingly "all salary adjustments must be approved by the Civil Service Commission." On November 9, 1966, the Civil Service Commission had adopted a resolution which purported to assume jurisdiction over all county employees to whom the merit system was extended by the aforementioned charter amendment, and said commission had advised relator that all employees of the juvenile court were under the merit system and that said commission had the responsibility to control all phases of personnel administration regarding those employees.

There are a number of issues presented by the pleadings in this case. It is the primary contention of the relator that under certain provisions of the County Budget Law and of the Juvenile Code the Juvenile Court of St. Louis County has the authority to employ, discharge, and fix the salary of the employees of the juvenile court, and that neither the budget officer nor the County Council has any authority to change the budget estimates of the juvenile division of the circuit court without its consent. In his brief he states the question as follows: "There is squarely presented in this case the issue of whether the County Budget Law and the Juvenile Code are applicable to St. Louis County, or whether, because of the status of that County as a so-called 'Special Charter County' under Article VI, Section 18 of the Constitution of Missouri 1945, those statutes are inapplicable to such County."

In general it is the contention of respondents that, as relates to the issues here presented, neither the County Budget Law nor the Juvenile Code applies to St. Louis County so as to permit the juvenile judge to "hire, fire and set the pay of county ad-ministrative employees"; that the inherent power of the circuit court to do the things necessary to preserve its functions does not extend to expenditures for personnel involved in juvenile administration; that personnel engaged in performing administrative and detention functions of the juvenile court are county employees and subject to the county's merit system, and that if the County Budget Law and the Juvenile Code are construed in the manner giving relator the authority he seeks they are unconstitutional in contravention of Article VI, § 18, respecting charter counties, and Article II, § 1, which provides for the separation of powers.

■ Section 50.640 (all statutory references are to RSMo 1959, V.A.M.S.), which applies to class one and two counties, contains the following: " * * * The estimates of the circuit court, including all activities thereof and of the circuit clerk, shall be transmitted to the budget officer by the circuit clerk. The estimates of the circuit clerk shall bear the approval of the circuit court. The budget officer or the county court shall not change the estimates of the circuit court or of the circuit clerk without the consent of the circuit court or the circuit clerk, respectively, but shall appropriate in the appropriation order the amounts estimated as originally submitted or as changed, with their consent." Apropos thereto is Section 72 of the St. Louis County Charter which provides that "[n]othing in this Charter shall be interpreted as giving the Council authority to change the provisions of law relating to the determination of the budget and number of employees of the Circuit Court and Circuit Clerk." We think it is quite clear that § 50.640 is applicable to St. Louis County. We find no specific provision of the charter which would preclude its application, and the quoted portion of § 72 plainly provides that the Council shall not be authorized to change the law in that regard.

■ It is our further view that the budget estimates of the circuit court re-

ferred to in § 50.640 shall be construed to include expenses for all the various activities of the juvenile division thereof. The actual trial sessions of the juvenile court are perhaps a small part of the services performed under the supervision of that court. Chapter 211 contains detailed provisions for the diagnosis, care and treatment of disturbed and neglected children. A large staff of deputy juvenile officers, caseworkers, investigators, and medical and psychiatric consultants are required in order to furnish the judge with facts and recommendations relating to each of the thousands of children referred to the juvenile court of St. Louis County each year. It seems clear that the court could not function effectively without the staff which works under its direction. It is also significant that § 50.640 contains the words "circuit court, including all activities thereof."

◼ We think there is, however, one restriction which should be considered implicit in the construction of § 50.640. That is that no change may be made in regard to *lawful* budget estimates. As indicated in the case of State ex rel. Hill v. Thatcher, 230 Mo.App. 1125, 94 S.W.2d 1053, changes should be permitted where the salary estimates, for example, are computed on a basis in excess of the lawful salary provided for the position or where there is no authority in law for expenditures that may be contained in the budget.

We will now consider the applicability of the Juvenile Code to St. Louis County. Although we have had various juvenile laws for many years, the present "Juvenile Act," adopted in 1957, greatly extended the scope of those laws. We are here particularly concerned with certain sections of that Act which deal with the appointment and compensation of juvenile court personnel. Section 211.161 provides that "[t]he juvenile court may appoint and fix the compensation of such professional and other personnel as it deems necessary to provide the court proper diagnostic, clinical and treatment services for children under its jurisdic-

tion." Section 211.331 states that counties of the first class shall provide a place of detention for children coming within the provisions of certain sections of the Act which "shall be in charge of a superintendent. The judge of the juvenile court shall appoint and fix the compensation and maintenance of the superintendent and of any assistants or other personnel required to operate the detention facility. Such compensation and maintenance are payable out of funds of the county." It is provided in § 211.351 that "[t]he juvenile court shall appoint a juvenile officer and other necessary juvenile court personnel to serve under the direction of the court in each county of the first and second class * * *." Section 211.381 contains salary limits for the juvenile officer, four deputy juvenile officers, secretaries, stenographers, clerks and typists in first class counties, and § 211.393(1) reads as follows: "The salaries and expenses of all juvenile court personnel in counties of the first and second class and the city of St. Louis are payable monthly out of county or city funds as the case may be, except that one-half of the salary of the juvenile officer of any circuit in which he is engaged full time, is payable by the state of Missouri, but not to exceed the sum of four thousand two hundred and fifty dollars annually." It will be noted that there is no specific statutory provision for fixing the salary of the juvenile court personnel appointed under the provisions of § 211.351. The salaries are not fixed in § 211.381 as that section merely provides that salaries of the employees therein designated shall not *exceed* the amounts therein stated.

In determining the extent to which the aforementioned sections of the Juvenile Code are applicable to St. Louis County it is necessary to consider the following constitutional provisions: Article VI, § 18(b). "The charter shall provide for its amendment, for the form of the county government, the number, kinds, manner of selection, terms of office and salaries of the county officers, and for the exercise of all

powers and duties of counties and county officers prescribed by the constitution and laws of the state." Section 18(e). "Laws shall be enacted providing for free and open elections in such counties, and laws may be enacted providing the number and salaries of the judicial officers therein as provided by this constitution and by law, but no law shall provide for any other office or employee of the county or fix the salary of any of its officers or employees." We should also have in mind the provision of the charter to the effect that "[n]othing in this Charter shall be interpreted as giving the Council authority to change the provisions of law relating to the determination of the budget and number of employees of the Circuit Court and Circuit Clerk."

We have said that "St. Louis County, regardlesss of its charter, remains a legal subdivision of the state. Art. VI, §§ 1 and 18(a). As such, it is charged with the performance of the state functions just as other counties are. * * * A charter county differs from others chiefly in the form of county government which it may adopt. The charter must provide for the structure of county government and shall provide for 'the number, kinds, manner of selection, terms of office and salaries of the county officers.' Section 18(b), supra. In fact, the General Assembly is prohibited from providing for any office or employee of the county or fixing the salary of any of its officers or employees other than election and judicial offices and officers. Section 18(e), supra. This is an express limitation on the legislative power." State on inf. of Dalton ex rel. Shepley v. Gamble, 365 Mo. 215, 280 S.W.2d 656, 659, 660. And, "in matters which are governmental functions, the state retains control and, as to such matters, the provisions of a city charter, although adopted under the constitutional provision therefor, must be and remain consistent with and subject to the statutes of the state enacted by the Legislature." Kansas City, Mo. v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195, 202. It is often very difficult to determine the border line between governmental functions and corporate functions relating to the county government.

In considering the question before us we have been impressed by the construction placed upon the applicable constitutional, statutory, and charter provisions by both the Juvenile Division of the Circuit Court of St. Louis County and the County Council. In that connection we refer to the established rule that the interpretation of an ambiguous constitutional or statutory provision by legislative bodies and by administrative, executive, and other public officials will be given serious consideration in determining the meaning thereof. See Rathjen v. Reorganized School District R–II, 365 Mo. 518, 284 S.W.2d 516, and State ex rel. Curators of University of Missouri v. Neill, Mo.Sup., 397 S.W.2d 666 [3]. Section 211.331 was enacted in 1957. It gave the juvenile judge the power to appoint the personnel of the detention facility and to fix the compensation of said employees. Ten years passed and the juvenile court did not (until the filing of this suit) assert any right to appoint and fix the compensation of said employees and they have been appointed and paid under the provisions of the merit system in accordance with the provisions of the charter and ordinance which place them thereunder. As we have heretofore noted, § 211.381 provides salary limits for various employees appointed by the juvenile court. It is obvious from the record that both the Juvenile Court and the County Council have fixed salaries which exceed the limitations specified in that section. It is apparent that salaries for administrative personnel have been fixed by the court in accordance with the grades and within the ranges provided by Chapter 201 of the county ordinances applicable to patronage employees. Salaries approved by the County Council have been based on county ordinances and have also exceeded the limits provided in § 211.381.

It is obvious from the foregoing that the relator and the respondents have not con-

strued the constitutional provisions as requiring that the statutes, supra, be controlling over the county ordinances in regard to the appointment of a part of the juvenile court personnel and in fixing the compensation of all of the personnel of that court.

In considering the questions here presented we should also have in mind the general rule that "[t]he courts have the inherent power and authority to incur and order paid all such expenses as are (reasonably) necessary for the holding of court and the administration of the duties of courts of justice." State ex rel. Gentry v. Becker, 351 Mo. 769, 174 S.W.2d 181, 183.

We have considered all of the constitutional, statutory and charter provisions heretofore mentioned and have reached the following conclusions: In general, the provisions of the Juvenile Act (Chap. 211) relate to state functions and are applicable to St. Louis County. It is obviously the policy of the state as shown by various sections of Chapter 211, as well as within the inherent powers of the court, that such employees as are reasonably necessary to carry out its functions shall be provided for the juvenile court. However, we think the personnel provided for the assistance of the juvenile court are not judicial officers within the meaning of Art. VI, § 18(e), but are employees of the county. Hasting v. Jasper County, 314 Mo. 144, 282 S.W. 700. We therefore hold that the Juvenile Division of the Circuit Court of St. Louis County may, by order, provide for such additional personnel (in either the administration or detention departments) as may be reasonably necessary to properly carry on the functions of that court; that amounts may be placed in the budget of said court for the compensation of said additional employees within the limitation of the applicable ordinances, and said estimates shall not be changed by the budget officer or the County Council without the consent of said court; that the employees so provided for shall be expeditiously employed and their salaries fixed in accordance with the charter, rules, and ordinances applicable to the civil service commission and the merit system; that the present employees serving the juvenile court are subject to the merit system and their salaries shall be fixed in accordance therewith and the estimates placed in the budget for said employees shall be in harmony with the salaries so fixed.

Since we have held that relator does not have authority to fix the salaries of juvenile court personnel we deem it unnecessary to consider the respondent's point that the statutes involved are unconstitutional as violative of Art. II, § 1, which provides for the separation of powers.

It is ordered and adjudged that respondents are hereby ousted from changing the estimates (with the exceptions noted herein) of the Juvenile Court of St. Louis County as contained in the annual budget, without the consent of said court.

The costs of this proceeding are taxed against respondents.

All concur.