The STATE of Missouri, at the relation of the JUDGES FOR the TWENTY–SECOND JUDICIAL CIRCUIT of the State of Missouri, Relators,

v.

The CITY OF ST. LOUIS, Missouri, a municipal corporation, et al., Respondents.

No. 58101.

Supreme Court of Missouri, En Banc.

March 27, 1973.

Roberts P. Elam, St. Louis, for relators.

Robert C. Nicholas, City Counselor, Eugene P. Freeman, Deputy City Counselor, St. Louis, for respondents.

*Original Proceeding in Mandamus*

MORGAN, Judge.

In this original proceeding in mandamus, the Judges of the Twenty-Second Judicial Circuit of Missouri, in their capacity as the Circuit Court of the City of St. Louis (hereinafter referred to as relators), seek to compel the City of St. Louis and certain of its officials (hereinafter referred to as respondents), to approve without change the 1972–1973 fiscal year budget request of relators for funds to operate the adminis-

trative and probation department of its Juvenile Division. The proposed budget, as submitted, reflected a declared need for funds for said purpose in the aggregate amount of $2,194,235. The actual appropriation made by respondents was in the amount of $1,895,430 or $298,805 less than requested.

The parties agree that the amount deleted by respondents was requested by relators, generally, for the purpose of employing thirty new employees and purchasing incidental office furniture and equipment needed by such added personnel. Although certain departmental transfers of other employees were contemplated, the disputed funds were to have been expended in the establishment of a new Legal Department in the Juvenile Division.

The fiscal year of the city commences on the first day of May of each year; and, in compliance with certain procedural requirements, reference the 1972–1973 year, respondents submitted the now questioned budget several months prior to said date. One exhibit (No. 2(b)) appears to be a copy of the minutes made of a meeting of relators on February 22, 1972. Such minutes indicate that "A resolution was offered regarding the lack of authority of Budget Officials of the City to change the budget of the Court pursuant to Section 50.640 V.A.M.S. [RSMo 1969]" and that "said resolution was adopted unanimously by vote of the Judges present." Similar resolutions were adopted on three later dates. The respondents, in turn, refused to give a perfunctory approval to the requested funds, generally, on the basis that Section 50.640 was a part of the "County Budget Law" (identified as such in Section 50.525) and was not applicable to the City of St. Louis. See Preisler v. Hayden, 309 S.W.2d 645 (Mo.1958). Unfortunately, the issue thus created, which certainly is not a relevant or dispositive issue in this case, helped create the impasse which now prevails. In oral argument before this court, the parties rather tacitly concede as much,

and we need not extend this opinion by exploring the same false issue—other than to point out that the result would be the same whether or not Section 50.640 was applicable. For clarity and convenience of reading, we do so now. Said section, now applicable to "class one and two counties," provides, in part, that the ". . . budget officer or the county court shall not change the estimates of the circuit court . . . ." While considering earlier statutes with the same provision, this court said in Graves v. Purcell, 337 Mo. 574, 85 S.W.2d 543 (banc 1935), at 1.c. 550: "It was certainly within the power and province of the Legislature to provide that in the matter of its *lawful expenditures* the circuit court should be free from the control of the county court." (Emphasis added.) Later, in this same connection, the court in State v. Thatcher, 230 Mo.App. 1125, 94 S.W.2d 1053 (1936), at 1.c. 1055, concluded that a contention the statute prohibited a revision of *"any* of the estimates . . . is not tenable." More recently, this court referred to the Thatcher case in State v. St. Louis County, Mo., 421 S.W.2d 249 (banc 1967), and said, 1.c. 253: "We think there is, however, one restriction which should be considered implicit in the construction of § 50.640. That is that no change may be made in regard to *lawful* budget estimates."

█ The conclusions reached in the cases noted are also fundamentally correct, because (1) they preserve the integrity of the separate departments of government, and (2) they allow for a harmonious relationship between each of such departments. In this instance, they allow the judicial department to request, and in fact to demand, approval of all *lawful expenditures* required to perform its functions, and at the same time they accept the right of the legislative department to refuse to approve and appropriate funds for *unlawful expenditures*.

█ One basic question arises—what expenditures are lawful? Without any

effort toward oversimplification, they may be classified as follows:

1. Those the General Assembly has fixed by statute or absolutely reposed in the court's discretion.

2. Those the local government unit (in this case the city), which is required to provide the funds to meet such expenditures, may have authorized previously, with or without request. (For example—see Mashak v. Poelker, 367 S.W.2d 625 (Mo. banc 1963).

3. Those reasonably necessary for the court to carry out its functions. (For example—State v. Becker, 351 Mo. 769, 174 S.W.2d 181 (1943).

It is generally agreed that the proposed expenditures now in dispute fall within the third category. Obviously, those within such classification can not be specifically delineated, and their validity must rest on whether or not they are "reasonably necessary." If they are: "It is obviously the policy of the state as shown by various sections of Chapter 211, as well as within the inherent powers of the court, that such employees as are reasonably necessary to carry out its functions shall be provided for the juvenile court." State v. St. Louis County, supra, at 255 of 421 S.W.2d [6–8]. (See particularly Section 211.351.)

Recently, this court in State ex rel. Weinstein v. St. Louis County, 451 S.W.2d 99 (banc 1970), delineated precisely the procedure to be followed in resolving whether or not a proposed expenditure falling in the third category was reasonably necessary and thus lawful. Therein, it was provided, when "conventional methods" had failed, that: "If, after the Juvenile Court, acting under the supervisory control of the Circuit Court of St. Louis County, determines its needs as to personnel and fixes compensation, the County Council deems such action to be unreasonable, the County Council may file a petition for review and final determination of such question in this Court, which has final su-perintending control over the Circuit Court of St. Louis County and its Juvenile Court. Article V, § 4, Const. of Mo.1945, V.A.M. S. Necessarily, in order not to interfere with operations of the Juvenile Court, such petition must be filed without unnecessary delay. In the absence of a determination, pursuant to such petition for review, that the action of the Juvenile Court is unreasonable, its order with respect to the personnel reasonably needed and their compensation will be final, and under such circumstances mandamus will lie, if necessary, to compel payment."

Notwithstanding a past history and demonstrated attitude of helpfulness and understanding between relators and respondents, conventional methods failed. Either as a part of "conventional methods" or as a predicate for invoking the doctrine of Weinstein, supra, relators should have made an effort to persuade respondents that the proposed expenditures were reasonably necessary. Such an effort can not be evaluated by any rigid standard, but it should embrace, at least, an attempt to show a "factual need" instead of merely a "declared need." Only from such an approach can it be determined that a proposed expenditure is or is not "reasonably necessary." From the meager record presented in this case, we can only classify relators' effort in the latter category, and it follows that respondents are not foreclosed by failing to file the "petition for review" called for by Weinstein.

Since the parties are now in the process of establishing a similar budget for the fiscal year 1973–1974, we are confident they will cooperate in determining whether or not a "factual need" has been demonstrated and appreciate the consequences thereof.

Accordingly, our alternative writ of mandamus is quashed as improvidently granted.

DONNELLY, SEILER, HOLMAN, and BARDGETT, JJ., concur; FINCH, C. J., concurs in separate concurring opinion

filed; HENLEY, J., concurs and concurs in concurring opinion of FINCH, C. J.

FINCH, Chief Justice (concurring).

I concur fully in the principal opinion. I file this concurrence only because I have the impression that some courts may have misconstrued our opinion in State ex rel. Weinstein v. St. Louis County, Mo., 451 S.W.2d 99 (banc 1970), as holding that they need merely express or declare a need for something, request in a routine way that it be furnished, and if it is not, then order the funding of the proposed program. Such is not a correct understanding of the Weinstein case. It is not a routine procedure. It authorizes the exercise of the inherent power of the court to provide things reasonably necessary to permit the court to perform its mission only if a genuine effort has been made to demonstrate an actual need, and only if a genuine effort to secure funding therefor through normal channels has been made.

In this case, a substantial change in the program of the Juvenile Court was proposed. Thirty new people were to be added. The city offered to make a joint study as to the need for such people, but this course was not pursued. It should have been in this case, although I do not mean to imply that such a survey would be a prerequisite in every case. If such study had been made and it had demonstrated that the program was well conceived and necessary to help solve the very troublesome problems of the Juvenile Court, the city might well have then appropriated the money. It had been cooperative with the court in the past.

In the future, courts seeking to rely on the inherent power doctrine to secure personnel or facilities should understand that a genuine need must be shown and that they must diligently seek to have that need funded by conventional means. Only if such efforts fail and it is clear that the fa-

cilities are reasonably necessary for the court to perform its function is the doctrine to be applied.

HENLEY, J., concurs and concurs in concurring opinion of FINCH, C. J.