In re 1979 BUDGET OF the JUVENILE COURT OF ST. LOUIS COUNTY.

No. 61232.

Supreme Court of Missouri,
En Banc.

Sept. 19, 1979.

Rehearing Denied Jan. 15, 1980.

Thomas W. Wehrle, St. Louis County Counselor, Robert H. Grant, Associate County Counselor, Clayton, for petitioner.

Shulamith Simon, Clifford E. Librach, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for respondent.

SEILER, Judge.

This is a petition for review of the budget of the juvenile court of St. Louis County filed by St. Louis County challenging several items in the 1979 budget as not reasonably necessary for the juvenile court's performance of its essential functions. Jurisdiction is in this court under its exercise of general superintending control over the circuit court of St. Louis County and its juvenile court. Mo.Const. Art. V, § 4.

The county council enacted Ordinance No. 9031 which approved the 1979 budget for all county offices and departments and in so doing deleted several items in the budget requested by the circuit court. Specific deletions are as follows: $41,099 to fund three positions in the Youth Opportunities Unlimited career counseling project (this sum was requested to match a grant for a project formerly funded fully by a private corporation); $55,910 to fund the 10% local share of four special programs (this sum was requested to enable the juvenile court to receive 90% federal funding for the following programs: Family Treatment Unit, Detention Diversion, Status Prevention and Release, and Project L.E.A. R.N. diagnostic services); $55,268 of the $112,608 requested to fund the Regional Group Home (initially all but 10% of this program was funded by the Missouri Council on Criminal Justice, then the 10% county share was increased to 50%, and finally, as of October 1, 1978, the county paid all costs so that the program would not end abruptly); $127,597 of the $262,651 requested to

fund the Court Community Services Program (initially all but 10% of this program was funded by the Missouri Council on Criminal Justice, then the 10% county share was increased to 50%, and finally, as of October 1, 1978, the county paid 100% of costs so that the program would not end abruptly); and, lastly, the entire $110,504 requested for the Diagnostic Treatment Services Program (this program was initially funded 90% by a federal grant in 1977, with the county paying 10%; in 1978 the county funded all costs). After the county council enacted the ordinance with the above deletions, the circuit court en banc informed the county council by letter that it did not consent to all the deletions in the juvenile court budget. The county then filed a petition for review in this court under the procedure directed by *State ex rel. Weinstein v. St. Louis County*, 451 S.W.2d 99 (Mo. banc 1970).

We begin with the inquiry of whether, as contended by the circuit court, the disputed items are required by law other than through the inherent power of the circuit court, for if the circuit court were correct, this petition for review would be improper. Section 50.640, RSMo 1978, requires the legislative branch to approve and fund lawful budget estimates of the judicial department. The circuit court cites *State ex rel. Judges for the 22nd Judicial Circuit v. City of St. Louis*, 494 S.W.2d 39 (Mo. banc 1973) as authority for the lawfulness of the budget estimates and the contention that the county is compelled to fund them. In that case, this court classified three categories of "lawful" expenditures: (1) those fixed by statute or absolutely reposed in the court's discretion; (2) those the local government unit is required to provide to meet such expenditures as may have been authorized previously; and, (3) those reasonably necessary for the court to carry out its functions. 494 S.W.2d at 41.

The circuit court refers to the state legislature's creation of a statewide juvenile court system, which this court recognized in *J.D.H. v. Juvenile Court of St. Louis County*, 508 S.W.2d 497 (Mo. banc 1974). Moreover, the circuit court submits that in § 211.011 *et seq.*, RSMo 1978, the legislature has clearly declared its purpose that the juvenile courts act as *parens patriae* and thus committed to the juvenile court judge the right to provide such personnel as the court deems necessary to provide proper diagnostic, clinical, and treatment services for children under its jurisdiction.

■ The circuit court assumes that the legislature's delegation of the above responsibilities has fixed by statute or absolutely reposed in the juvenile court's discretion the right to compel the specific funding levels and programs disputed in this litigation. There is no doubt that these experimental projects are within the broad mission or scope of the juvenile court. If these were the only diagnostic, clinical and treatment services available, there would be a serious question as to whether they could go unfunded. But the circuit court has not shown that these are the only programs that provide these services and that their reduced or deleted budget items will seriously impair the juvenile court's delivery of diagnostic, clinical and treatment services. In contrast, the county points out that these programs originated, not in the enactments of the legislature, but as the result of incentive or "seed money" funding by federal grant programs. Moreover, the county submits that the circuit court already has at its disposal the facilities and personnel for providing the services required by statute or absolutely reposed in the discretion of the juvenile court. We conclude that the specific programs in dispute are not expenditures fixed by statute or absolutely reposed in the discretion of the juvenile court.

■ The circuit court also argues that under *State ex rel. Judges for the 22nd Judicial Circuit*, the county is compelled to fund all but one of these programs because it previously authorized their funding in other fiscal years. Such a reading of the

second category of required "lawful" expenditures mentioned in that case would destroy the county's incentive to be innovative and experimental for fear of being saddled with a continuing obligation to fund unsuccessful projects. The projects disputed here were innovative and experimental, encouraged by federal grant incentives. The "previously authorized" category of lawful expenditures in *State ex rel. Judges for the 22nd Judicial Circuit* states a presumption favoring past budget items of the court. This presumption was not meant to shackle the county for all time to continue experimental programs, regardless of the county's future assessment of the programs under cost-benefit analysis.

Having considered the first two categories of lawful expenditures enunciated in *State ex rel. Judges of the 22nd Judicial Circuit*, we now address whether the expenditures fall within the third category, "[t]hose reasonably necessary for the court to carry out its functions." 494 S.W.2d at 41. This category of lawful expenditures involves the inherent power of the circuit court to incur and order paid all such expenses "as are reasonably necessary for the holding of court and the administration of the duties of courts of justice," as enunciated in *State ex rel. Weinstein v. St. Louis County*, 421 S.W.2d 249, 255 (Mo. banc 1967). In *State ex rel. Judges of the 22nd Judicial Circuit*, we held that the burden of proving that expenditures are "reasonably necessary" is upon the circuit court and it must "attempt to show a 'factual need' instead of merely a 'declared need.' " 494 S.W.2d at 41. The circuit court has failed to meet this burden of persuasion. The essential functions of the juvenile court remain the same as they were prior to the inception of the federal grant incentive programs that induced the establishment of the programs at issue in this case. On what is before us, we cannot say that without these programs the juvenile court will be unable to perform its essential functions.

In conclusion, we find that the disputed expenditures are not required by statute or absolutely reposed in the discretion of the juvenile court, nor have they been shown to be reasonably necessary for the functioning of the court. Accordingly, we order that the items in question be deleted from the 1979 budget of the juvenile court.

BARDGETT, C. J., WELLIVER and MORGAN, JJ., and HENLEY, Senior Judge, concur.

DONNELLY, J., concurs in result in separate opinion filed.

RENDLEN, J., concurs in result and concurs in separate opinion of DONNELLY, J.

HIGGINS, J., not participating because not a member of the court when cause was submitted.

DONNELLY, Judge, concurring in result.

In *State ex rel. Weinstein v. St. Louis County*, 451 S.W.2d 99, 102 (Mo. banc 1970), this Court held:

"If, after the Juvenile Court, acting under the supervisory control of the Circuit Court of St. Louis County, determines its needs as to personnel and fixes compensation, the County Council deems such action to be unreasonable, the County Council may file a petition for review and final determination of such question in this Court, which has final superintending control over the Circuit Court of St. Louis County and its Juvenile Court. Article V, § 4, Const. of Mo. 1945, V.A. M.S. Necessarily, in order not to interfere with operations of the Juvenile Court, such petition must be filed without unnecessary delay. In the absence of a determination, pursuant to such petition for review, that the action of the Juvenile Court is unreasonable, its order with respect to the personnel reasonably needed and their compensation will be final, and under such circumstances mandamus will lie, if necessary, to compel payment."

We have now had several years' experience with the *Weinstein* procedure. I be-

lieve it has failed its purpose and that a different approach is demanded.

I agree that in order that a Circuit Court may administer justice it is essential that it control the employees who assist it. However, the Circuit Court does not have power to levy taxes in order to defray expenses necessary to perform its judicial functions. The taxing power is in the County. Mo. Const. Art. X, § 1 and Art. VI, § 18(d). Therefore, I believe a more reasonable and practical approach requires that the Circuit Court fix the compensation of employees serving it, but that, in so doing, it not exceed reasonable amounts appropriated by the County for the total operation of the Court. It is the County which must supply the funds.

In Missouri, the powers of government are divided into three distinct departments—the legislative, executive and judicial. Mo.Const. Art. II, § 1. The fiscal power is in the County. The Court should comply with the fiscal limitation set by the County. Should the County officials act arbitrarily or capriciously and fail to provide for the payment of adequate compensation to employees serving the Court, resulting in an impairment or destruction of the administration of justice, they should be required to do so by mandamus. *Cf. Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577; *State ex rel. Koehler v. Bulger*, 289 Mo. 441, 233 S.W. 486; *State ex rel. Shartel v. Humphreys*, 338 Mo. 1091, 93 S.W.2d 924. In short, I would shift the burden of showing unreasonableness from the County to the Court.

I concur in the result.