In re The 1983 BUDGET FOR the CIRCUIT COURT OF ST. LOUIS COUNTY, MO.

No. 65271.

Supreme Court of Missouri,
En Banc.

March 20, 1984.

Thomas W. Wehrle, Christopher J. McCarthy, Clayton, for petitioner.

WELLIVER, Judge.

Petitioner, St. Louis County, seeks review of a decision of the Judicial Finance Commission (Commission) finding petitioner legally obligated to appropriate funds for the purchase of professional liability insurance for respondents, the judges of the Twenty-First Judicial Circuit. We have jurisdiction under Mo. Const. art. V, § 4, and § 477.600.7, RSMo Cum.Supp.1983. In accordance with § 477.600.7, we review the decision of the Commission de novo. We reverse.

We adopt the Commission's findings of fact, summarized herein:

The Twenty-First Judicial Circuit is composed of twenty circuit court judges and thirteen associate circuit judges, all of whom receive their salaries from the State of Missouri. The judges supervise juvenile court personnel, employed by petitioner, as part of their administrative responsibilities. Respondents included in the circuit court's budget for the 1983 fiscal year an item for $350 per judge for the purchase of professional liability insurance for each judge in the circuit.[1] Petitioner currently provides liability insurance for some of its employees, including doctors, prosecuting attorneys, police officers, jailors, dentists, nurses, ambulance drivers and others. Respondents previously had not secured liability insurance, but sought such coverage in response to at least one suit brought by a county employee against a circuit court judge.

Petitioner denied this item and omitted the funds sought by respondents from the final budget approved and adopted by the County Council. The presiding judge of the Twenty-First Judicial Circuit then notified petitioner that the court objected to the reduction in its budget. Thereafter, petitioner filed a petition for review with the Judicial Finance Commission seeking a determination that it was not legally obligated to appropriate funds for the purchase of professional liability insurance for respondents.[2] After a settlement confer-

---

1. While the fiscal year in question ended while this appeal was pending, we decline to dismiss the case as moot since it presents an important question "capable of repetition, yet evading review." *Gramex Corp. v. Von Romer,* 603 S.W.2d 521, 523 (Mo. banc 1980).

2. In denying respondents' budget request and enacting a budget omitting these funds, petitioner acted contrary to the procedure mandated in § 50.640, RSMo Cum.Supp.1983. For future reference, we call to the petitioner's attention § 50.640.2: "If the county government body deems the estimates of the circuit court to be

ence failed to resolve the dispute, the Commission held a hearing at which both parties were represented. The Commission issued findings of fact and conclusions of law and held that the costs for professional liability insurance "is a reasonably necessary expenditure of the court system, which the county is obligated to pay." Petitioner then filed a petition for review with this Court.

Petitioner contends the Commission erred when it ruled as it did because (1) such insurance is not reasonably necessary for the operation of the courts; (2) such insurance constitutes additional compensation for which the state is responsible under § 478.023, RSMo Cum.Supp.1983, and which is not an expense of the circuit court for which the county is responsible under § 476.270, RSMo 1978; and (3) the item requested by respondents constitutes a state mandated increase in the level of activity required of St. Louis County for which the state has not appropriated funds necessary to provide the activity, in violation of Mo. Const. art. X, § 21.

The State of Missouri historically has assigned the responsibility for financing the operation of circuit courts to the counties of this state. In order to safeguard the independence of our circuit courts, the legislature has mandated that the county's governing body shall not revise the estimates of expenditures submitted by the circuit court "but shall appropriate in the appropriation order the amounts estimated as originally submitted." § 50.640, RSMo Cum.Supp.1983; *see Graves v. Purcell,* 337 Mo. 574, 85 S.W.2d 543, 550 (banc 1935). We have never held that the statute requires counties to appropriate all funds requested as a matter of right, adopting instead a "rule of reason" under which the county may challenge budget estimates it considers to be unlawful or unnecessary for the operation of the courts and the administration of justice. *See, e.g. In re 1979 Budget of the Juvenile Court of St. Louis County,* 590 S.W.2d 900 (Mo. banc

1979); *State ex rel. Twenty-Second Judicial Circuit v. City of St. Louis,* 494 S.W.2d 39 (Mo. banc 1973); *State ex rel. Weinstein v. St. Louis County,* 421 S.W.2d 249, 253 (Mo. banc 1967); *State ex rel. Gentry v. Becker,* 351 Mo. 769, 174 S.W.2d 181, 183 (1943); *State ex rel. Hill v. Thatcher,* 230 Mo.App. 1125, 94 S.W.2d 1053, 1055 (1936).

The legislature revised and codified the process for resolving budget disputes between counties and circuit courts with the amendment of § 50.640 in 1982. The legislation created the Judicial Finance Commission and charged it with mediating and, if necessary, adjudicating circuit court budget disputes. In instances when a county contests the reasonableness of the circuit court's budget, the statute requires the court to demonstrate the reasonableness of its proposed budget before the Commission. The most significant innovation introduced by the 1982 amendments requires the Commission to consider a range of enumerated criteria, including "the expenditures necessary for the administration of all other county functions" when assessing whether the court's budget estimates are reasonable.

The Commission's holding in this case undoubtedly was prompted by a justifiable concern over the increasing number of suits against judges in this and other states. Indeed, the swelling of judges' administrative responsibilities coupled with the trend toward narrowing judicial immunity may well warrant extending liability insurance coverage to judges and treating the cost of such insurance as a necessary court expense.

Under the circumstances attending this case, however, we cannot conclude that respondents have demonstrated a reasonable necessity for the insurance coverage they seek. Petitioner calls our attention to recently enacted legislation creating the "State Legal Defense Fund." The Fund supplants the former Tort Defense Fund, extending coverage to a broader range of

unreasonable, the governing body may file a petition for review with the judicial finance

commission ... *after the estimates are included in the county budget.*" (Emphasis added.)

state employees than that afforded by the Tort Defense Fund. Section 105.711.2, RSMo Cum.Supp.1983, authorizes

> the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against:
>
> (1) The state of Missouri, or any agency thereof, pursuant to section 537.600, RSMo; or
>
> (2) Any officer or employee of the state of Missouri or any agency thereof, including without any limitation, elected officials, appointees, ... upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state....

The statute clearly encompasses the acts and decisions of judges arising from the performance of their official duties and responsibilities.

The Fund provides comprehensive protection against judgments and the costs of defending suits. Section 105.711.4 authorized payments up to a maximum of $100,000 per claimant and $800,000 "for all claims arising out of and judgments based upon the same act or joined in a single cause." The Attorney General is instructed to undertake "[a]ny investigation, defense, negotiation, compromise of any claim" covered by the Fund. § 105.716, RSMo Cum.Supp.1983.

We believe the purchase of professional liability insurance policies for respondents at this time would be duplicative of protection currently provided by the state.[3] In the absence of a showing that the coverage under § 105.711 is so inadequate as to jeopardize the orderly operation of the courts, we cannot conclude that the acquisition of a separate insurance policy constitutes a reasonable cost of the circuit court chargeable to the county. Under the circumstanc-

es noted in the foregoing, we hold that petitioner is not legally obligated to fund the premium for professional liability insurance for respondents.

This holding being dispositive of the appeal, we find it unnecessary to address the other points raised by petitioner.

The judgment of the Judicial Finance Commission is reversed.

All concur.

---

**3.** The record does not disclose either the limits of liability or the extent of coverage afforded by the insurance policy sought by respondents.