823 S.W.2d 471 (1992)
STATE of Missouri ex rel. TWENTY-SECOND JUDICIAL CIRCUIT and the Honorable Jack L. Koehr, Relators,
v.
Virvus JONES, Thomas A. Villa and Vincent C. Schoemehl, Jr., Respondents.
No. 73848.
Supreme Court of Missouri, En Banc.
January 17, 1992.
As Modified on Denial of Rehearing February 25, 1992.
*472 G. Keith Phoenix, Elkin L. Kistner, Tyrone A. Taborn, St. Louis, for relators.
James J. Wilson, City Counselor, Julian L. Bush, Associate City Counselor, Brian S. Witherspoon, Asst. City Counselor, St. Louis, for respondents.
David Collins, Macon, for amicus curiae Presiding Judges.
Alan C. Kohn, St. Louis, for amicus curiae Metropolitan Assoc. of St. Louis.
HOLSTEIN, Judge.
This mandamus proceeding was transferred here following opinion by the Missouri Court of Appeals, Eastern District. At issue is whether the Board of Estimates and Appropriations for the City of St. Louis (the Board of E and A) has discretion to delete or modify certain items included in the circuit court's budget estimates without first obtaining relief from the Judicial Finance Commission. We conclude that the Board does not have such discretion, and the writ of mandamus will be made peremptory.
The courts have discretion to issue a writ of mandamus in cases where ministerial duties sought to be coerced are simple and definite, arising under conditions admitted or proved and imposed by law. State ex rel. Bunker Resource Recycling and Reclamation, Inc. v. Mehan, 782 S.W.2d 381, 389 (Mo. banc 1990). If the Board of E and A has a clear duty to include the budget estimates of the circuit court in its appropriation bill without modification, that duty may be enforced by mandamus.
Section 50.640.1, RSMo 1986, provides in part:
The estimates of the circuit court, including all activities thereof and of the circuit clerk, shall be transmitted to the budget officer by the circuit clerk. The estimates of the circuit clerk shall bear the approval of the circuit court. The budget officer or the county commission shall not change the estimates of the circuit court or of the circuit clerk without the consent of the circuit court or the circuit clerk, respectively, but shall appropriate in the appropriation order the amounts estimated as originally submitted or as changed, with their consent.
Section 50.641.1 provides:
The estimates of the circuit court referred to in section 50.640 which are to be included within the county budget by the budget officers and the county commissions without change shall include those categories of expenditures to support the operations of the circuit court which are attributable to the business of the circuit judges, associate circuit judges and the staffs serving such judges.
Before 1982 § 50.640 provided that neither the budget officer nor the county court could "change the estimates of the circuit court ... without the consent of the circuit court." That provision had been construed to require counties to appropriate all funds requested unless the county challenged the budget estimates as unlawful. State ex rel. Judges for the Twenty-Second Judicial Circuit v. City of St. Louis, 494 S.W.2d 39, 40 (Mo. banc 1973). "Lawful" expenditures included three categories: (1) those fixed by statute or absolutely reposed in the court's discretion; (2) those the local government unit is required to provide because such expenditures were authorized previously; and (3) those reasonably necessary for the court to carry out its function. In re 1979 Budget of the *473 Juvenile Court, 590 S.W.2d 900, 901 (Mo. banc 1980). However, because the statute provided no procedure for review, this Court made provision for such review. In State ex rel. Weinstein v. St. Louis County, 451 S.W.2d 99, 102 (Mo. banc 1970), this Court said, "If ... the County Council deems [the budget estimates] unreasonable, the County Council may file a petition for review and final determination of such question in this Court, which has final superintending control over the Circuit Court [under] Article V, § 4 Const. of Mo.1945, V.A.M.S." This procedure was not altogether satisfactory and some believed a "different approach" was demanded. In re 1979 Budget of the Juvenile Court, 590 S.W.2d at 902-03 (Donnelly, J., concurring in result).
In 1982 the statute was amended to make provision for the Judicial Finance Commission. That commission was to provide an expedited and less formal proceeding for a review of the circuit courts' budget estimates. § 50.640.2, RSMo 1986. If either the circuit court or the governing body of the county was dissatisfied with that determination, the statutes authorized review before this Court. § 477.600.7, RSMo 1986. With these principles in mind, we turn to the circumstances presented in this case.
The City of St. Louis is recognized as both a city and a county. Mo. Const. art. VI, § 31. Insofar as the City provides budgetary support for the circuit court, it performs the functions of a county. In its charter the City does not use the statutory terms "budget officer" or "county commission." Pursuant to the City charter, expenditures of the City must be appropriated by ordinance passed by the Board of Aldermen, and no appropriation may be adopted without the recommendation of the Board of E and A. City of St. Louis Charter, article IV, § 25 (1980). The Board of E and A is the agency of the City to which annual budget estimates of the various offices, including that of the circuit court, must be submitted. City of St. Louis Charter, article XVI, § 2 (1980). The Board of E and A prepares and submits the annual appropriation bill to the Board of Aldermen. The Board of Aldermen may decrease any item in the appropriation bill but may not increase any item or insert any new item unless the Board of E and A has failed to perform its duty in a timely fashion. City of St. Louis Charter, article XVI, § 3 (amended January 30, 1987). Items of appropriation are subject to veto by the mayor unless overridden by a vote of two-thirds of the Board of Aldermen. City of St. Louis Charter, article IV, §§ 17, 25 (1980). Thus, the Board of E and A, the Board of Aldermen, and the mayor share responsibility for approval of the budget.
From the above discussion it appears that in the context of Chapter 50, RSMo, St. Louis City is a county, the Board of E and A is the "budget officer," and the Board of E and A, the Board of Aldermen, and the mayor jointly constitute the "county commission." The Board of E and A is currently comprised of the respondents, Mayor Vincent Schoemehl, Comptroller Virvus Jones, and President of the Board of Aldermen Thomas Villa. See City of St. Louis Charter, article XVI, section 1.
On March 19, 1991, the circuit court submitted a proposed budget for the fiscal year commencing July 1, 1991. The Board of E and A deleted a $61,017,561.00 line item for capital improvements from the budget estimates and made an "across-the-board" 11.1% reduction of all remaining line items. These changes were contained in the budget bill submitted to the Board of Aldermen on April 30, 1991.
On May 13, 1991, a petition for writ of mandamus was filed in the Missouri Court of Appeals, Eastern District. The named relators were the "Twenty-Second Judicial Circuit" and Honorable Jack L. Koehr, presiding judge of that circuit. The named respondents were the City of St. Louis, the budget director for the City, Joanne LaSala, and the three individuals who comprise the Board of E and A. The petition sought an order requiring the Board of E and A to reinstate those items that had been deleted from the budget estimates of the circuit court. On May 23, 1991, the court of appeals issued a preliminary order alternatively *474 ordering the Board of E and A to answer the petition or, failing that, a judgment granting the relief sought would be entered. On that same date the writ of mandamus was denied as to the City and Joanne LaSala. On June 27, 1991, following an accelerated briefing schedule, a peremptory writ was issued requiring the Board of E and A to reinstate the budget request for the circuit court's budget estimates in the appropriation bill except for the line item for capital improvements.
The respondents complied and reinstated the 11.1% across-the-board reduction. However, the item for capital improvements was apparently omitted in its entirety from the appropriations bill that was adopted by the City. Following an opinion by the court of appeals in August of 1991, this case was transferred here.
Essentially all the facts as recited above are admitted or appear in the record. No claim is now made that the respondents had discretion to make the 11.1% across-the-board deletion. The issues submitted here are 1) whether relators have capacity and standing to bring this action, and 2) whether respondents have a nondiscretionary duty to include the "capital improvements" line item of the budget estimates of the circuit court in the appropriation bill.

I.
The first argument here is that the circuit court is neither a natural person nor corporate entity and, therefore, has no capacity to bring this mandamus action. The fact that a statute creates a governmental entity does not necessarily give that entity the ability to sue and be sued. But that does not end the inquiry.
In Parker v. Unemployment Compensation Comm'n, 358 Mo. 365, 214 S.W.2d 529 (1948), a question arose as to whether the Division of Employment Security had capacity to sue in its official name. The statutes creating the Division of Employment Security had no provision giving it specific authority to sue or be sued in its official name. Nevertheless, this Court noted several statutory provisions that suggested at least limited capacity by the Division to be a party to litigation. The Court concluded that the legislature must have intended the Division to be a legal entity, at least for the limited purposes provided by the statutes. 214 S.W.2d at 534.
The circuit court is a constitutional entity. Mo. Const. art. V, § 1. Like the Division of Employment Security in the case noted above, the circuit court has no specific authority to sue or be sued. However, the "circuit court" is the entity required to submit budget estimates to the budget officers. § 50.540, RSMo 1986. If the governing body files a petition for review with the Judicial Finance Commission, the circuit court has the burden of convincing that commission that the amount estimated and included in the budget is reasonable. § 50.640, RSMo 1986. If dissatisfied with the finding of the Judicial Finance Commission, "the circuit court ... may seek review by the Supreme Court" in manner and in the time prescribed by law. § 477.600.7, RSMo 1986. In short, the legislature has identified the circuit court as the agency that must prepare the budget estimates, prove the reasonableness of the estimates if they are challenged, and seek review of an adverse determination as to the reasonableness or defend a favorable determination as to the reasonableness of the estimates. As was noted in Parker, the absence of a "blanket power" to sue and be sued is not dispositive. It is sufficient that the governmental agency in question be given statutory powers that are ordinarily possessed only by a legal entity. By the grant of such powers, "it is clear to us that the legislature must have intended the [agency] to be a legal entity." Parker, 214 S.W.2d at 534. The grant of the powers regarding budgets and finances suffices to establish the circuit court's status as a "quasi-artificial entity" for the limited purpose of enforcing or protecting its authority granted pursuant to Chapter 50 of the revised statutes.
The second argument is that Judge Koehr lacks standing to sue and that all the circuit and associate circuit judges are indispensable parties. The argument relating to standing is less than compelling *475 and confuses the concepts of standing and indispensable parties. Standing to sue is an interest in the subject matter of the suit, which if valid, gives that person a right to relief. Earls v. King, 785 S.W.2d 741, 743 (Mo.App.1990). The threshold requirement for standing is extremely low where mandamus is brought to enforce a nondiscretionary duty allegedly required of a public official. For example, the attorney general was held to have standing to seek mandamus to compel a county to publish a financial statement. State ex rel. Taylor v. Wade, 360 Mo. 895, 231 S.W.2d 179, 182 (banc 1950). Even a private citizen was held to have "the sesame which unlocks the gates of mandatory authority whenever an officer whose functions are purely ministerial refuses to perform his office." State ex rel. Wear v. Francis, 95 Mo. 44, 8 S.W. 1, 2 (1888). The principle at the heart of these cases is that public officers are required to perform ministerial duties without any request or demand, and the entire public has a right to that performance. Even the slightest interest is sufficient to support standing to bring mandamus in such circumstances.
In this case, the presiding judge of the circuit court is constitutionally responsible for administration of that court. Mo. Const. art. V, § 15. Administration of the court necessarily requires that an adequate budget be appropriated by the county or, as in this case, the City. The presiding judge has such interest as will support standing to be a relator in a mandamus action to enforce the mandatory responsibilities of public officials regarding the circuit court's budget.
The second leg of the argument is that the other judges of the circuit court are indispensable parties. Apparently respondents believe that all judges have joint responsibility for the budget so that unanimous consent is required to bring a mandamus action. The argument ignores the authority of the presiding judge for administration of the court noted above. A necessary aspect of administration is preparing, submitting and sustaining a budget estimate and an appropriation for operations of the circuit court. Although administrative responsibilities may be delegated to other judges by rule, statute or order of the presiding judge, only the presiding judge has primary administrative responsibility for the circuit court. Requiring all judges to join in an action relating to enforcement of mandatory duties of county or city officials regarding the circuit court's budget would give a single dissident judge the ability to disrupt operations of the court. The office of presiding judge was designed to prevent just such a chaotic result. No other judge has the administrative responsibility granted the presiding judge. Consequently, the presiding judge's unique interest in administrative matters gives that judge the responsibility to enforce the budget and finance provisions of Chapter 50.
In determining if a party is indispensable, the preliminary question is whether the presence of such party is essential under Rule 52.04(a). If the answer is in the negative, no further consideration need be given to the indispensability of that party. Bunting v. McDonnell Aircraft Corp., 522 S.W.2d 161, 169 (Mo. banc 1975). There is nothing to suggest that complete relief cannot be accorded to the parties now present, that the other judges claim an interest that will be impaired or impeded if they are not included in this case, or that the other judges have a claim that will subject the City to inconsistent obligations. The judges other than the presiding judge of the circuit court are not necessary parties. It follows that they are not indispensable parties.

II.
Respondents argued before the court of appeals that notwithstanding the mandatory language of § 50.640, relators did not establish a "colorable claim" that the circuit court's estimates are reasonable and therefore discretion should be exercised to deny the writ of mandamus. The primary authority cited in support of their argument before the court of appeals was the sweeping language of State ex rel. Jacobsmeyer v. Thatcher, 338 Mo. 622, 92 S.W.2d 640, 643 (banc 1936):

*476 [E]ven though a clear legal right has been established, the court must look to the large public interest concerned and should act in view of all existing facts and with due regard to the consequences which might result.... [W]here the result might bring about confusion and disorder, or be unreasonable or injurious to the public ... the court should deny the writ, irrespective of the question of clear legal right....
Respondents claim that including the $61,017,561.00 item for capital improvements would amount to 25% of the total current general revenues being allocated to the circuit court, as compared to 4% in the preceding fiscal year. The respondents argue that if they are required to reinstate the circuit court's budget estimate, then the City would be required to approve a budget bill that includes those estimates. The argument continues that while the proceedings are pending before the Judicial Finance Commission and subject to review by the Supreme Court, vital city services will be disrupted.
What the argument overlooks is that a petition for review under § 50.640.2 could have been filed at any time after the budget estimates were presented in March of 1991. The fiscal year did not begin until July 1, 1991, well after the budget estimates were in the hands of city officials. For reasons that are not clear, the City failed to seek early review of the reasonableness of the estimates before the Judicial Finance Commission. The Judicial Finance Commission is mandated to act immediately to resolve the disputed items and "to the maximum extent practicable, shall resolve the dispute prior to the beginning of the fiscal year in question." § 50.640.2, RSMo 1896. That procedure has proven to be very effective in settling disputes between circuit courts and the governing bodies. Since its creation in 1982, forty-three petitions for review have been filed. Only three have resulted in review by this Court. See Bosley v. Berra, 688 S.W.2d 353 (Mo. banc 1985); In re 1984 Budget for the Circuit Court of St. Louis County, 687 S.W.2d 896 (Mo. banc 1985); and In re 1983 Budget for the Circuit Court of St. Louis County, 665 S.W.2d 943 (Mo. banc 1984).
Even if review were delayed, the statutes provide an additional option to keep the wheels of some local governments turning while any dispute as to reasonableness is resolved. As has previously been noted, in the context of Chapter 50, the City of St. Louis functions as a county. If no appropriations are made by a first or second class county at the end of any fiscal year, the amount of the last annual appropriation is deemed reappropriated until the governing body acts. § 50.620, RSMo 1986. No statute and no provision in the City's charter are found that would prevent the City from delaying approval of the annual budget until any dispute is resolved. The City could continue to function as it had in the prior fiscal year.
Yet another option available, if review by the Judicial Finance Commission should be delayed, is to seek immediate temporary partial relief first from the Commission and, failing that, from this Court. The Judicial Finance Commission is a legislatively created administrative tribunal, acting to mediate and, if necessary, adjudicate the reasonableness of disputed budget requests by the circuit court. In re 1983 Budget, 665 S.W.2d at 944. In general, administrative agencies have not only express power but also those powers necessarily implied from the language of a statute. Scheble v. Missouri Clean Water Comm'n, 734 S.W.2d 541, 556 (Mo.App. 1987); Brooks v. Pool-Leffler, 636 S.W.2d 113, 119 (Mo.App.1982).
The Judicial Finance Commission has specific authority to make factual determinations regarding the reasonableness of the circuit court's budget. That duty includes the discretion to determine the reasonableness of part or all of any particular budget item, as well as the reasonableness of the total amount budgeted. Incidental and necessary to the proper discharge of the Commission's function is a mechanism for avoiding disruption of critical government services while the reasonableness of the circuit court's budget estimates are being resolved. Thus, the Judicial Finance *477 Commission has implied authority to order the effective date of the appropriation of the new budget delayed until the Commission has had an opportunity to conduct its review of the facts. Naturally, that implied authority should be exercised with great restraint and only when it clearly appears that failure to grant temporary relief will result in the disruption of vital public services and the party seeking relief has been diligent in obtaining review.
In sum, the procedure for review before the Judicial Finance Commission has provided a speedy and adequate remedy to resolve disputes as to the reasonableness of the circuit court budget estimates. The argument contained in the respondents' brief before the court of appeals essentially asks that their disdain of those procedures be rewarded. To fail to grant mandamus would only encourage disregard of the mandatory statutory duties described in § 50.640 and, in the broader analysis, have far more devastating effects on governmental and judicial services. The legislatively enacted and judicially approved remedies noted above provide ample protection against disruption of services.

III.
Although the issue was not raised in the pleadings or in the brief before the court of appeals, the respondents argue here that the line item relating to capital improvements is unlawful because expenditures to repair or alter the county's property are not "expenditures to support the operations of the circuit court." The argument necessitates a construction of the statutes. When examining the meaning of statutory enactments, the primary role of this Court is to ascertain the intent of the legislature from the language used and give effect to that intent, if possible. Trailiner Corp. v. Dir. of Revenue, 783 S.W.2d 917, 920 (Mo. banc 1990). Words and phrases used in statutes are to be taken in their plain or ordinary and usual sense. § 1.090, RSMo 1986.
The purposes of §§ 50.640, 50.641 and 477.600 are to ensure that county officials include expenditures to support the judicial function in their annual appropriations and to provide those county officials an informal and expeditious mechanism for challenging the reasonableness of the appropriations sought by the circuit court. Given that legislative intent, "operations of the circuit court" necessarily includes the whole process that causes the courts to function. No one could seriously argue that a reasonably safe, accessible and habitable facility in which to hold court is not critical to performance of the judicial function.
Respondents argue that the words "expenditures to support the operations of the circuit court" should be construed to read "operating expenditures of the circuit court." The words "operating" and "operational" are adjectives that limit the meaning of the word with which they are associated. By contrast, the noun "operations" used in the statute is not so limited in its meaning. Notwithstanding that some manipulation of the words of the statute is necessary to support its result, respondents argue that standard accounting principles distinguish between "operating" expenditures and "capital" expenditures. See Government Accounting Standards Board, Statement No. 11: Measurement Focus and Basis of AccountingGovernmental Fund Operating Statements 31, 34 (May 1990). The same treatise describes capital expenditures as any that "result from acquiring capital assets." Id. at 34. Capital assets are defined to include buildings, equipment and land. Id. at 3. By that standard, a typewriter would be considered a capital asset, and a substantial repair of a typewriter that would be expected to last into the next fiscal year would be a capital improvement.[1] At the same time, a lease of buildings or equipment does not include *478 acquisition of an asset. Therefore, expenditures for that purpose would be an operating expense. The legislature did not choose to make a distinction between "operating expenditures" and "capital expenditures." In addition, to construe the words "expenditures to support the operations of the circuit court" in such a way as to limit it to expenses for goods and services expended during the current budget period is inconsistent with the laudable intent and purposes for which §§ 50.640, 50.641 and 477.600 were adopted.
Respondents also cite statutes giving county commissions the duty to erect and maintain courthouses in support of their argument. See §§ 49.310, 49.470, 49.520 and 478.035, RSMo 1986. The duty to erect and maintain courthouses is not inconsistent with the duties required under the budget and finance law to appropriate the budget estimates of the circuit court. County and, in this case, city government have responsibilities regarding the budget and the facilities related to circuit court operations. Among those is the authority to challenge budget estimates perceived to be unreasonable. County officials oversee how expenditures of the circuit court are made to ensure that such expenditures are in compliance with state law and charter and ordinance provisions regarding obtaining competitive bidding, maintenance of financial records, and the like. In addition, the county commissions may have authority to impose reasonable regulations to ensure courthouses and other county property used by the circuit courts are safely and efficiently operated, maintained and constructed. However, it goes too far to say that counties have absolute control over budgets relating to courthouses to the exclusion of the judicial branch. Under the budget and finance law, the circuit courts play the essential role of seeing that there is a reasonable appropriation to provide accessible, habitable and secure facilities in which to carry out the judicial function. The exclusive remedy for challenging the reasonableness of the budget estimates is to file a petition for review with the Judicial Finance Commission.

CONCLUSION
For approximately seven months the City of St. Louis has operated based upon a budget appropriated in conformity with the writ of mandamus issued by the Missouri Court of Appeals, Eastern District. That writ and the opinion that was filed in August of last year, authorized the City to exclude the item related to capital improvements. Thus, the City for seven months has justifiably relied on the opinion in making its expenditures. As we have noted above, that reliance was misplaced. Nevertheless, this Court concludes that discretion requires that the line item for capital improvements be reduced by seven-twelfths of the original amount of the estimate to account for that portion of the year during which the City relied in good faith on the opinion of the Missouri Court of Appeals, Eastern District.
A question also arises as to whether the Court ought to make the writ peremptory immediately or give the City an opportunity to seek relief before the Judicial Finance Commission. The Court is persuaded that the City acted in good faith in approving its appropriation without the line item for capital improvements. In that the City relied on the court of appeals opinion, the City cannot be convicted of undue delay in seeking review. Again, discretion requires that the peremptory writ of this Court be withheld for fifteen days to give the City an opportunity to seek review before the Judicial Finance Commission. Should such petition for review be filed with the Judicial Finance Commission, the writ will be delayed an additional fifteen days to give the Judicial Finance Commission an opportunity to determine whether the issues can be resolved or whether it should grant the City any other relief.
The Court concludes that the Board of E and A had a nondiscretionary duty to include the budget estimates of the circuit court for the Twenty-Second Judicial Circuit as submitted on March 19, 1991, in the proposed budget without change. Relators are entitled to a writ of mandamus. For the reasons set forth above, the Board of E and A is to be ordered to reinstate five-twelfths *479 of the line item for capital improvements deleted by it in its appropriations bill submitted to the Board of Aldermen on April 30, 1991. Issuance of the writ will be withheld for fifteen days from the date of this opinion. If the Clerk is notified that a petition for review has been timely filed with the Judicial Finance Commission, the peremptory writ shall be withheld for an additional fifteen days, at the end of which time the peremptory writ shall issue.
All concur.
NOTES
[1] In People ex rel. Schlaeger v. Riley Tar & Chemical Corp., 389 Ill. 434, 59 N.E.2d 843, 846 (1945), the court characterized "typewriters, desks, chairs or other items of equipment" as "capital expenditures, and not `operating expense'." Thus the hypothetical given is not without precedent, and the case cited highlights the dangers of making a distinction between capital and noncapital items in the budget.