The STATE of Missouri, at the Relation of the JUDGES FOR the 22ND JUDICIAL CIRCUIT OF the STATE of Missouri, Plaintiffs,

v.

CITY OF ST. LOUIS, Missouri, the Members of the Board of Aldermen of the City of St. Louis, and the Members of the Board of Estimate and Apportionment of the City of St. Louis, Defendants.

No. 43848.

Missouri Court of Appeals, Eastern District, Division One.

May 28, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1981.

Godfrey P. Padberg, St. Louis, for plaintiffs.

James J. Wilson, Associate City Counselor, St. Louis, for defendants.

STEWART, Judge.

This is an original proceeding in mandamus instituted by the Judges of the 22nd Judicial Circuit against the City of St. Louis, a body corporate and politic which is both a charter city and a county under the Constitution of Missouri; the members of its Board of Aldermen, the legislative body of the City; and the members of its Board of Estimate and Apportionment, charged by charter with submission of appropriation bills to the Board of Aldermen to secure moneys necessary for the use of each department within the City of St. Louis. Charter of the City of St. Louis, Article XVI. The defendants are being sued in their official capacities described by their official title pursuant to Court Rule 52.-13(d), V.A.M.R. Plaintiffs seek the restoration to their budget for fiscal year 1980–1981 accounts and the appropriation of funds to pay certain moneys alleged to have been deleted from their budget in violation of the law.

Budget estimates were timely submitted by plaintiffs in accord with § 50.640 [1] RSMo 1978 and § 50.641 [2] RSMo Supp.1979. Plaintiffs consented to a 3% reduction in their budget and the budget was approved. Defendants subsequently deleted from plaintiffs' budget, without plaintiffs' consent, the estimated expenses of the Court Administrator in the sum of $414,720 and the combined estimates for the Juvenile Court and the Detention Center in the sum of $1,614,400. We note parenthetically that City has continued to make funds available for the Court Administrator and the Juvenile Court and the Detention Center pending disposition of this case.

Defendants did not file a petition for review as provided in *State ex rel. Weinstein v. St. Louis County,* 451 S.W.2d 99 (Mo. banc 1970). They therefore do not contest the reasonable necessity of the expenditures estimated in plaintiffs' budget for the fiscal year in question with respect to the budget estimate for the Court Administrator.

Defendants do not contest the issue with respect to the combined budget of the Juvenile Court and the Detention Center. We therefore are not required to discuss that issue except to issue our permanent writ of mandamus on that issue.

As stated by defendants the only issue before this Court is whether and to what extent § 485.010 RSMo 1978 relieves defendants from the obligation to fund the office of Court Administrator. The issue requires an interpretation of § 485.010 RSMo 1978 which reads as follows:

"485.010 Presiding Judge may appoint secretary, additional staff—set salaries—source of funds for salaries

1. The presiding judge of each circuit may appoint a secretary or other staff

1. § 50.640 reads as follows: "Except as in this section otherwise specified, all offices, departments, courts, institutions, commissions or other agencies spending moneys of the county, shall perform the duties and observe the restrictions set forth in sections 50.540 to 50.630 relating to budget procedure and appropriations. The estimates of the circuit court, including all activities thereof and of the circuit clerk, shall be transmitted to the budget officer by the circuit clerk. The estimates of the circuit clerk shall bear the approval of the circuit court. The budget officer or the county court shall not change the estimates of the circuit court or of the circuit clerk without the consent of the circuit court or the circuit clerk, respectively, but shall appropriate in the appropriation order the amounts estimated as originally submitted or as changed, with their consent.

(R.S.1939, § 10931; L.1945, p. 603; L.1959, S.B.No.64, § 1; L.1961, p. 463, § A)"

2. § 50.641 reads as follows: "1. The estimates of the circuit court referred to in section 50.640 which are to be included within the county budget by the budget officers and the county courts without change shall include those categories of expenditures to support the operations of the circuit court which are attributable to the business of the circuit judges, associate circuit judges and the staffs serving such judges.

2. Nothing contained in section 50.640 shall be construed as providing for the budgeting of county funds to fund the operation of municipal divisions of the circuit court."
Laws 1978, p. 717, § A (§ 1), effective January 2, 1979.

personnel to aid the presiding judge in the administration of the judicial business of the circuit. Such secretary and other staff personnel appointed pursuant to the provisions of this section shall serve at the pleasure of the presiding judge. The personnel authorized by this section are in addition to staff support from the circuit clerks, deputy circuit clerks, division clerks, municipal clerks, and any other staff personnel which may otherwise be provided by law.

2. The salary and number of secretarial or other staff personnel shall be established by the presiding judge of the circuit within funds made available for that purpose. Personnel authorized by this section shall be paid from state funds or federal grant moneys which are available for that purpose and not from county funds. Laws 1978, p. 917, § A (§ 1), effective Jan. 2, 1979."

The office of the Court Administrator as heretofore funded by the defendants consists of the Court Administrator and a staff of twenty-three including an assistant Court Administrator, a secretary, clerk-typists, data clerks, calendar clerk, law clerks, swing court reporters, pre-trial release commissioner and assistants to the commissioner.

The Court Administrator in the Twenty-Second Judicial Circuit is responsible for the overall administration of the Circuit Court under the general administrative direction of the Presiding Judge. He disseminates information and supervises the implementation of directives received from the Presiding Judge. He is responsible for all fiscal, personnel, and other support services including collection of workload statistics and acts as the court liaison between other governmental and non-governmental agencies and groups. He supervises research and special planning studies, the preparation of federal grant applications, the maintenance of each judge's law library, the Pre-Trial Release Commissioner and his staff, all court reporters' relief and vacation time, the court room and judges' chambers, the buildings, and plans for improvement

and construction. The Court Administrator provides secretarial services for all of the judges; he arranges for the transportation and mental examination of criminal defendants and such other duties assigned to him by the Presiding Judge and General Term.

As previously stated for the purposes of this proceeding the expenditures budgeted for the Court Administrator and his staff are considered to be reasonably necessary. The question presented to us is whether the § 485.010 RSMo 1978 encompasses the Court Administrator and his staff.

Our objective is to determine the intent of the legislature. *State ex rel. Zoological Pk. Subd., St. Louis v. Jordan*, 521 S.W.2d 369, 372 (Mo.1975). The legislature is obviously aware of the term "Court Administrator." The Constitution of Missouri, 1945, as amended 1976, provides for a State Courts Administration in Art. 5, § 4. The terms "Court Administrator" or "administrator" are not found in § 485.010 RSMo 1978. The statute makes reference to "a secretary." The only dictionary definition that could be applicable is "one employed to handle correspondence and manage routine and detail work of a superior." Webster's Third New International Dictionary. The statute gives an alternative to the presiding judge in that he may select "a secretary or other staff personnel" to aid him in the administration of the judicial business of the court. The statute in the first instance provides for a secretary; it would appear that the alternative of "other staff personnel" contemplates someone having qualifications similar to those of a secretary, a clerk-typist or clerical helper. We do not believe from a reading of paragraph 1 of the statute that the legislature intended to provide for a court administrator. Rather it appears that the purpose was to provide additional assistance to the Presiding Judge in answering letters addressed to him, necessary filing and those matters that he cannot delegate to the administrator.

Although the reference to the secretary or other staff personnel can be read as singular in the first paragraph of § 485.010 RSMo 1978 the second paragraph would

indicate that the presiding judge could hire more than one person. The second paragraph of the statute states "[t]he salary and number of secretarial or other staff personnel shall be established by the circuit court . . ." This would seem to add some opacity to the apparent clarity of the first paragraph of the statute.

In order to determine the intent of the legislature we may look for and consider the interpretation given the statute by the legislature. *State ex rel. Weinstein v. St. Louis County*, 421 S.W.2d 249, 254 (Mo. banc 1967). The legislature in its appropriation bill covering § 485.010 RSMo 1978 used the following language:

> "Section 6.065. To the Supreme Court
> For the purpose of funding the payment of personal service for Presiding Judges' secretaries as authorized by House Bill 1634, an Act of the Second Regular Session, 79th General Assembly
> Personal Service
> From General Revenue Fund
> (Not to exceed 43. F.T.E.) . . . . . . . . . $417,330"
> Laws, 1980, p. 36

This amount allocated between the forty-three judicial circuits indicates an average budget of $9,705.00 for each circuit, an obvious indication that the legislature did not intend the State to fund the office of the Court Administrator.

The burden cast upon the trial courts by ever increasing caseloads and the necessary increase in judicial personnel and facilities has brought about a need for professional assistance in the administration of the system. As a result, the term "court administrator" has become a word of art in modern judicial administration.

It is apparent that if the legislature had intended that the State provide the funds for court administrators in the large circuits it would have been explicit. We must determine what the legislature intended from what it said, not what one might think it intended to say or inadvertently failed to say. *Gray v. Wallace*, 319 S.W.2d 582, 585 (Mo.1958). If the legislature had intended to have the State fund the offices of Court Administrator it would have been more explicit.

In reaching our conclusion we also take cognizance of the fact that the legislature did not undertake to relieve the county governments from funding other judicial functions such as the juvenile courts and detention centers.

We are of the opinion that § 485.010 RSMo 1978 does not relieve local governments performing county functions from the responsibility of funding the office of Court Administrator.

Our preliminary order in mandamus is made permanent.

STEPHAN, P. J., concurs.

SMITH, J., concurs in part and dissents in part in separate opinion.

SMITH, Judge, concurring in part and dissenting in part.

I concur in the majority opinion as it applies to the Juvenile Court and Detention Center and respectfully dissent as to the office of the Court Administrator. In doing so I state my agreement with my brethren in the majority that Sec. 485.010 RSMo 1978 is opaque, and recognize that the interpretation of that section by the majority is a permissible one.

In enacting that section, it appears to me that the General Assembly has recognized two different functions of the staff necessary for the operation of the circuit courts. One function belongs to the personnel who deal with the day-to-day litigation business of the courts including receipt and filing of legal papers, clerical functions in the courtrooms, billing and collection of costs, record-keeping and similar functions. These personnel are those referred to in the last sentence of paragraph one of 485.010. The second function belongs to personnel who deal with the administrative operations of the circuit court as an entity. Their duties are set forth in the majority opinion and need not be repeated here. The need for such personnel arises from the increasing workload and size of the courts and the imposition of functions on the courts, subsidiary to the actual handling of litigation.

It is this group of personnel to which the first two sentences of paragraph one and all of paragraph two of Sec. 485.010 refer. I believe Sec. 485.010 mandates payment of the first group by the City and the second by the State.

Article V, Sec. 15 paragraph 3 Missouri Constitution, places the responsibility for the administration of the circuit upon the presiding judge. In some circuits with relatively small caseloads and few personnel this responsibility may be effectively handled by the presiding judge and a secretary or secretaries. It would be wasteful in those cases to provide for a court administrator. In some circuits, particularly large urban ones,[1] the complex administration of the court could not be handled by the circuit judge utilizing only secretarial personnel or personnel of similar background. Professional administrative personnel are required. The nature of the work of the court administrator set forth in the majority opinion and the personnel enumerated therein demonstrates that. I believe the words utilized by the General Assembly "other staff personnel" was intended to include a professional administrative staff.

Normally, the doctrine of *ejusdem generis* (applied without identification by the majority) would warrant the conclusion reached by the majority. But because of the variable nature of staff necessary to service the diverse needs of the various circuits I believe it reasonable to interpret the words "other staff personnel" to encompass the personnel required to handle the administrative responsibilities of the particular circuit involved. I do not believe it was intended to be limited in meaning to one particular type of staff i. e.: secretarial. The statute provides that the administrative staff shall be paid from state funds not from city funds.

I would quash the alternative writ as it applies to the Court Administrator's office.

1. The 22nd Circuit has twenty-three circuit judges, seven associate circuit judges, and four municipal judges.