STATE of Missouri, on the Information of Norman H. Anderson, Attorney General, at the relation of Noah WEINSTEIN, Judge of Division No. 3 of the Circuit Court of Circuit No. 21 of the State of Missouri, Relator,

v.

ST. LOUIS COUNTY, Missouri, a body corporate and politic et al., Respondents.

No. 53837.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1970.

Rehearing Denied March 9, 1970.

Roberts P. Elam, St. Louis, for relator.

Joseph B. Moore, St. Louis County Counselor, Clayton, for respondents; Norman C. Parker, St. Louis, Gen. Counsel for the St. Louis County Charter Commission, of counsel.

Carroll J. Donohue, St. Louis, filed a brief on behalf of Judges of Circuit Court of St. Louis County, Missouri, amicus curiae.

Paul D. Hess, Jr., Macon, filed a brief on behalf of Missouri Council of Juvenile Court Judges, amicus curiae.

PER CURIAM:

This is an original proceeding in the nature of quo warranto instituted by the Attorney General at the relation of Honorable Noah Weinstein, Judge of the Juvenile Division of the Circuit Court of St. Louis County. The Respondents are St. Louis County and certain officials of the County.

This is the second proceeding instituted by the Attorney General at the relation of this Relator, the first having been determined by this Court, in State ex inf. Anderson ex rel. Weinstein v. St. Louis County et al., Mo.Sup., 421 S.W.2d 249.

The Relator is the Judge of Division No. 3 of Circuit No. 21 of the State of Missouri, designated the Juvenile Court of St. Louis County.

The Respondent, St. Louis County, is a county of the first class which, on April 2, 1968, pursuant to Article VI, Section 18, Const. of Mo., 1945, V.A.M.S., undertook to adopt a new Charter.

The purpose of this proceeding is to oust St. Louis County, and its officers, from

usurping alleged rights and duties of the Juvenile Court of St. Louis County in its administration of the Juvenile Code. Section 211.011 et seq. RSMo 1959, V.A.M.S.

The questions presented are:

(1) who shall select and control the personnel serving the administration and detention departments of the Juvenile Court?

(2) who shall determine the number of employees serving said departments?

(3) who shall fix their compensation?

These questions involve the fundamental nature and function of the judicial department of government and of the powers which it possesses to carry out such function. The Constitution of Missouri divides the powers of government into three distinct departments, vests the judicial power in certain courts of the state, guarantees to the people certain rights, and places upon the courts the obligation to protect and enforce those rights and to administer justice.

Article II, § 1, Const. of Mo.1945, V.A. M.S., reads as follows:

"The powers of government shall be divided into three distinct departments— the legislative, executive and judicial— each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted."

Article V, § 1, Const. of Mo.1945, V.A. M.S., reads as follows:

"The judicial power of the state shall be vested in a supreme court, courts of appeals, circuit courts, probate courts, the St. Louis courts of criminal correction, the existing courts of common pleas, magistrates courts, and municipal corporation courts."

Article I, § 14, Const. of Mo.1945, V.A. M.S., reads as follows:

"That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay."

This Court, in State ex rel. Gentry v. Becker, 351 Mo. 769, 174 S.W.2d 181, recognized that within the inherent power of the courts is the authority to do all things that are reasonably necessary for the administration of justice. The existence of such inherent authority and the basic necessity therefor were extensively considered by the Supreme Court of Indiana in the case of Noble County Council v. State ex rel. Fifer, 234 Ind. 172, 125 N.E.2d 709, 713, where the Court said:

"However, the authority of the court to appoint a probation officer, fix his salary and require payment thereof, does not rest upon mere legislative fiat. The court has inherent and constitutional authority to employ necessary personnel with which to perform its inherent and constitutional functions and to fix the salary of such personnel, within reasonable standards, and to require appropriation and payment therefor. The necessity of such authority in the courts is grounded upon the most fundamental and far reaching considerations.

"The preserving of the constitutional framework of our government against encroachment by one branch upon another is one of the prime responsibilities of our courts. Within and dependent upon this structure of constitutional government, our people are blessed by a galaxy of rights, privileges and immunities guaranteed to us by constitutional declaration. * * *

"These mandates necessarily carry with them the right to quarters appropriate to the office and personnel adequate to perform the functions thereof. The right to appoint a necessary staff of personnel necessarily carriers with it the right to have such appointees paid a salary commensurate with their responsibilities. The right cannot be made amenable to and/or denied by a county council or the legislature itself. Our courts are the bulwark, the final authority which guarantees to every individual his right to breathe free, to prosper and be secure within the framework of a constitutional government. The arm which holds the scales of justice cannot be shackled or made impotent by either restraint, circumvention or denial by another branch of that government. * * *"

A conclusion contrary to the views expressed in the foregoing Noble County Council case would vest in the legislative department of government the power to determine the extent to which the judicial department could perform its judicial functions. This could be done by limiting the number of employees, regardless of need, or by providing for no employees at all. This result can be avoided only if the judicial department has the inherent power to provide personnel necessary for the performance of its functions. Of course, such inherent power in the judicial department should be exercised only on occasions where necessary personnel and facilities are not provided by conventional methods. When, however, conventional sources do not provide necessary funds, the court does have inherent authority to do those things essential to the performance of its inherent and constitutional functions.

We are of the opinion that within the inherent power of the Juvenile Court of St. Louis County, subject to the supervisory control of the Circuit Court of St. Louis County (Art. V, §§ 4, 15 and 28, Const. of Mo., 1945, V.A.M.S.; § 478.063, RSMo 1959, V.A.M.S.; and State ex rel. MacNish v. Landwehr, 332 Mo. 622, 60 S. W.2d 4), is the authority to select and appoint employees reasonably necessary to carry out its functions of care, discipline, detention and protection of children who come within its jurisdiction, and to fix their compensation. In order that the Court may administer justice under the Juvenile Code, it is essential that it control the employees who assist it.

If, after the Juvenile Court, acting under the supervisory control of the Circuit Court of St. Louis County, determines its needs as to personnel and fixes compensation, the County Council deems such action to be unreasonable, the County Council may file a petition for review and final determination of such question in this Court, which has final superintending control over the Circuit Court of St. Louis County and its Juvenile Court. Article V, § 4, Const. of Mo.1945, V.A.M.S. Necessarily, in order not to interfere with operations of the Juvenile Court, such petition must be filed without unnecessary delay. In the absence of a determination, pursuant to such petition for review, that the action of the Juvenile Court is unreasonable, its order with respect to the personnel reasonably needed and their compensation will be final, and under such circumstances mandamus will lie, if necessary, to compel payment.

It is ordered and adjudged that respondents are hereby ousted from proceeding in a manner inconsistent with this opinion.

We decline to determine the validity of the adoption of the Charter in this proceeding.

The costs are taxed against respondents.