138 Wis.2d 483 (1987)
406 N.W.2d 372
IN the INTEREST OF J.A., a Person Under the Age of 18 Years: RACINE COUNTY, Appellant,
v.
Honorable Jon B. SKOW, presiding, Branch 3, Respondent-Petitioner.
No. 84-1375.
Supreme Court of Wisconsin.
Submitted on briefs January 7, 1987.
Decided June 1, 1987.
*485 For the respondent-petitioner there was a brief in the court of appeals by Donald P. Johns, assistant attorney general, with whom on the brief was Bronson C. La Follette, attorney general.
For the appellant there was a brief in the court of appeals by William F. Bock, corporation counsel, Racine.
BABLITCH, WILLIAM A., J.
The Honorable Jon B. Skow (Judge Skow), circuit judge, Racine county, seeks review of a decision of the court of appeals which summarily reversed his order requiring the Racine County Human Services Department (Department) *486 to produce certain information concerning all foster care placements in the county.[1] We conclude that a judge of a court assigned to exercise jurisdiction under The Children's Code, ch. 48, Stats., has the statutory power to order investigations and reports relating to any problem the judge reasonably believes exists in the foster care program if the order is triggered by information received while handling a particular case before the judge. The judge must delineate the reasons for the court's request in the order which is subject to review for abuse of discretion. Accordingly, we reverse the court of appeals.
The events which preceded Judge Skow's order and prompted its issuance are as follows. Effective August 1, 1982, Judge Skow was assigned to hear juvenile matters in the Racine county circuit court. The assignment was effective for two years. On April 16, 1984, Judge Skow, pursuant to a temporary physical custody request filed by the Department, ordered temporary physical custody of J.A., a 16 year old girl, and approved her placement in a foster home. After a hearing on probable cause for detention, the court found that J.A. had been kicked out of her father's house and her mother would not take her. On April 18, 1984, the Department filed a CHIPS petition alleging that the child's father was unable to provide the necessary special care for the child and that neither the child's mother, father nor any of her relatives wanted to have her live with them. The CHIPS petition also alleged that J.A. had been having a sexual relationship with a 32 year old man.
*487 After a hearing on April 24, 1984, Judge Skow ordered continued temporary physical custody of J.A. in foster care pending a factfinding hearing scheduled for May 21, 1984. On May 16, 1984, J.A.'s social worker filed a notice of change of foster care placement which indicated that the foster care parents with whom J.A. was placed in April requested that she be removed from their care "because she was not following the rules." J.A. was placed in another foster home but ran away and was apprehended on May 17, 1984.
A hearing on J.A.'s runaway status was held on May 18. It was revealed that the foster mother to whom J.A. had been assigned in April was the sister of the 32 year old man with whom J.A. was alleged to have had a sexual relationship. Testimony of the foster parents and J.A.'s social worker established that J.A. had suggested that particular foster care placement to her social worker at the prompting of her boyfriend. Though J.A.'s social worker did not know of the family relationship between the foster mother and J.A.'s male friend, he found out within several days. Nonetheless, the social worker did not seek removal of J.A. from the foster home; rather he instructed the foster parents to keep J.A. and the foster mother's brother apart. The foster parents subsequently requested removal of J.A. because they could not keep her from seeing the man.
Upon discovering these facts, Judge Skow expressed to J.A.'s social worker and a Department supervisor his displeasure with their handling of J.A.'s case. He ordered the Department to furnish certain information concerning foster parents and children in the county. The Department was to provide the information within 10 days. The Department *488 objected to the order arguing that the court had no jurisdiction to issue it.
Ten days following the order's issuance, Racine county filed a motion to vacate it. The court denied the motion and restated its order, providing the Department an additional 24 hours to comply. Instead of complying, the Department appealed the order. The court of appeals reversed Judge Skow's order because it concluded that he was sitting as the juvenile court judge by specific assignment to J.A.'s case and therefore his authority extended only to the particular case before him.
Two issues are presented in this appeal. First, did the court of appeals err in reversing the circuit court order on the grounds that Judge Skow presided by virtue of a specific assignment to the case rather than a judge of a court assigned to exercise jurisdiction under The Children's Code. Second, does ch. 48, Stats., give a juvenile court judge the power to require a county human services department to prepare a comprehensive report on foster case placements; if so, does the grant of such power violate the separation of powers doctrine.
[1]
The first issue raised in this appeal, whether the court of appeals erred in concluding Judge Skow was not sitting as a judge of a court assigned to exercise jurisdiction under The Children's Code at the time he issued the order, is easily resolved. Contrary to the court of appeals' conclusion, Judge Skow was at the time he issued the order the judge assigned to juvenile matters. We take judicial notice of the order, effective August 1, 1982, signed by Chief Judge John C. Ahlgrimm, assigning Judge Skow to hear juvenile matters. Judge Skow's juvenile court assignment *489 ended on July 30, 1984, at which time he was reassigned to hear other matters.
[2]
Given Judge Skow was assigned to hear juvenile cases, the court of appeals' conclusion that Judge Skow had no authority to issue the order because he was not the judge assigned to exercise jurisdiction under ch. 48, Stats., cannot be sustained. Thus, we must reach the second issue, i.e., whether a judge of a court assigned to exercise jurisdiction under The Children's Code has the power to require a county human services department to prepare a comprehensive report on foster care placements and the related question of whether the grant of such power to the courts violates the separation of powers doctrine.
[3]
If Judge Skow did not have this power, the order constituted an error of law and therefore an abuse of discretion. Whether there has been an abuse of discretion depends upon the construction of ch. 48, Stats, i.e., does ch. 48 grant judges the power to order a county social service department to provide a comprehensive report on foster placements? The construction of a statute is a question of law which the court decides independently without deference to the determinations of the trial court and court of appeals. Demars v. LaPour, 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985).
Chapter 48, Stats., confers on the court "exclusive original jurisdiction" over children in need of protection and treatment. Section 48.13. More specifically, judges of courts assigned to exercise jurisdiction under The Children's Code are authorized to place children found to be in need of protection or services in foster care where necessary to protect the child's well being. *490 Sections 48.34(3)(c), 48.345 and 48.355(1). The statutes also require continued supervision of such placements by the court. See sec. 48.357. The statutes direct county social service departments to provide certain services to the court to assist it in performing these functions and the many others required by the statute. See secs. 48.06(2), 48.067(8) and (9), 48.069(1)(e) and 48.08(1).
Section 48.08(1), Stats., the statutory authority Judge Skow relies on to support his order, directs the following:
"It is the duty of each person appointed to furnish services to the court as provided in secs. 48.06 and 48.07 to make such investigations and exercise such discretionary powers as the judge may direct, to keep a written record of such investigations and to submit a report to the judge. Such person shall keep informed concerning the conduct and condition of the child under his supervision and shall report thereon as the judge directs." Section 48.08(1).
Section 48.069(1)(e), also relied on by Judge Skow, orders the county social service department to: "[p]erform any other functions consistent with this chapter which are ordered by the court." In addition we note that sec. 48.067(9) directs county social service department intake workers to "[p]erform any other functions ordered by the court, and assist the court ... in ... carrying out its other duties when the court or chief judge so requests." Section 48.067(9).
[4]
While it is clear from the plain language of the statute, particularly sec. 48.01(1), Stats., that social service departments must make reports and perform *491 investigative services for the court, the statute does not specify the scope of the reports they must furnish and investigations they must conduct. Because this is unclear this court will ascertain the legislature's intent from the "scope, history, context, subject matter and object ..." of ch. 48. Ball v. District No. 4, Area Board, 117 Wis. 2d 529, 538, 345 N.W.2d 389. We note also that the intent of sec. 48.01(1) must be derived from the act as a whole. E.g., Standard Theatres v. Transportation Dept., 118 Wis. 2d 730, 740, 349 N.W.2d 661 (1984). We note that sec. 48.01, specifically requires that the chapter be liberally construed to effect the objectives set forth in sec. 48.01. Chapter 48 confers on the courts broad jurisdiction over children. See secs. 48.12 through 48.18. See also Legislative Council Memorandum, Wis. Stat. Ann. ch. 48, subchapter III (West 1979).
The statute contemplates a substantial role for juvenile courts and judges in implementing the objectives of the statute. For example, judges are directed not only to determine the disposition of cases involving children in need of protection or services, secs. 48.335 and 48.34, Stats., but also to formulate the written policies governing child welfare intake procedures and even when necessary to act as intake workers. Sections 48.06(2) and 48.10.
In addition, judges are also required to decide on placements and treatment which will maintain and protect the well being of children under the court's jurisdiction. Section 48.34, Stats. The judge is also charged by statute with continuing supervision of children adjudged in need of protection or services. See, e.g., secs. 48.363, 48.365 and 48.64(4)(c). It is not surprising, given the substantial duties imposed on the courts, that the legislature has directed social *492 service departments to assist the court in performing those duties. The legislature undoubtedly recognized that the court must have complete information to adequately perform its myriad of duties and it therefore designated the social service department to maintain and provide such information upon request. See secs. 48.08(1), 48.33, 48.067, 48.069 and 48.59. Without such information, the purposes of the statute could not be accomplished.
[5]
We conclude based on our construction of the statute that the scope of the social service department's duty to provide information must be coextensive with the judge's duties under the statute. This is the only way to assure that the court has the means necessary to perform its statutory duties and to effectuate the objectives of the statute. If, for example, a judge in reviewing a case discovers deficiencies in the provision of services to children, it is the judge's duty to make further inquiries. Because the statute directs courts to provide continued supervision of child placements and treatment, the judge is obligated to make such inquiries. Accordingly, the social service department must assist the judge in determining the exact nature and extent of the problem discovered by the court while resolving the case before it. Thus, if in the course of resolving a specific case the judge detects potentially far reaching problems in the care and protection of children in the county, it is within the judge's discretion to order social service departments to prepare comprehensive reports and conduct investigations.
[6]
The judge must delineate the reasons for the court's request in the order. This will discourage the *493 issuance of unnecessarily broad information requests and facilitate appellate review of the court's exercise of discretion.
[7]
In this case Judge Skow has not set forth in the order his reasons for requesting the information relating to all foster care placements in the county. Thus, this court cannot review his action to determine whether he has abused his discretion. Although J.A. is now over 18 years of age and may no longer be subject to the jurisdiction of the court, see sec. 48.12, Stats., we cannot assume that the problems to which the order was presumably directed have been resolved. We therefore remand the case so Judge Skow can delineate the reasons supporting his order to the Department to furnish information concerning foster parents and children in the county, including the circumstances in the J.A. case which gave rise to the order.
[8]
We also hold that the legislature's grant of power to the judiciary to order reports and investigations relating to children in need of protection and services does not violate the separation of powers requirement of the Wisconsin Constitution.[2] This court has previously described the doctrine as follows:

*494 "The Wisconsin constitution creates three separate coordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another." State v. Holmes, 106 Wis. 2d 31, 42, 315 N.W.2d 703 (1981).
We have previously held that this doctrine is not absolute. "The separation of powers doctrine states the principle of shared, rather than completely separated powers. The doctrine envisions a government of separated branches sharing certain powers." Id. at 43. To find a separation of powers violation the court must find that the exercise of power by one branch of government "unduly burden or substantially interfere with the other branch's exercise of its power." In Matter of Complaint Against Grady, 118 Wis. 2d 762, 775, 348 N.W.2d 559 (1984).
[9]
Racine county contends that the legislative grant of power to the judiciary to issue comprehensive orders concerning children in foster care interferes with the executive branch's, i.e., the Department's, "purely administrative function of licensing, training *495 and working with foster homes and foster care." Appellant's court of appeals brief p. 12 (May 16, 1986). They argue that the statute therefore violates the separation of powers requirement of the Wisconsin Constitution. We disagree.
The statute envisions a cooperative effort between the court and county social service departments to effectuate its purposes. See secs. 48.06, 48.33, 48.34, 48.57(1)(a) and (f) and 48.64, Stats. Thus, judicial and executive branches share certain power as is contemplated by the separation of powers doctrine. E.g., Holmes, 106 Wis. 2d at 42-43. In addition, the statute requires county agencies providing child welfare services to supervise placements and treatment and to obtain and retain certain information concerning the children to whom they provide services. See, e.g., secs. 48.33 and 48.64. Because a judge in ordering information concerning children receiving child welfare services is only requesting information which the agency is required to maintain, we conclude the statute imposes no substantial interference or undue burden on department operations.
By the Court.Decision of the court of appeals is reversed and the cause is remanded to the circuit court for proceedings consistent with this opinion.
SHIRLEY S. ABRAHAMSON, J. (concurring in part).
The order in this case raises an issue of law, which the majority treats too broadly, and an issue of judicial administration which the majority does not treat at all. The issue of law is whether Judge Skow exceeded his statutory authority in the order in this case. The issue of judicial administration is how a judge of a juvenile court should proceed when the judge identifies potentially far-reaching systemic *496 problems in an agency's supervision of a program, in this case, the foster care system, which affects the functioning of the juvenile court. I write separately to address these issues.

I.
Framing the issue as whether gives ch. 48 gives "a juvenile court judge the power to require a county human services department to prepare a comprehensive report," the majority holds that ch. 48 gives the judge of juvenile court power to order a comprehensive report "if the order is triggered by information received while handling a particular case before the judge."[1]
The majority opinion treats the issue too broadly by labeling Judge Skow's order as one to produce a "comprehensive" report. The word comprehensive is so general that it may mislead the reader into thinking that the judge of a juvenile court has the power to issue an order much different from the one in this case. Judge Skow ordered the department to provide him with nine items of information concerning each child placed in the county foster care system *497 pursuant to a juvenile court dispositional order.[2] Judge Skow did not, as the Racine county brief asserts, seek information about the administrative functioning of the agency or about the administration and licensing of foster homes. The judge did not demand information on the internal workings of the agency, order the agency to investigate itself or generally order the agency to provide a comprehensive account of itself.
*498 Sec. 48.08 (1) authorizes the judge to order the county department to make investigations and reports but does not spell out the purpose, scope, and proper subject matter of the investigations and reports. The legislative history behind the bill of which sec. 48.08 was a part, however, indicates that the drafters hoped to ensure that the investigating agency would provide information to the court about the child and the possible dispositions for that child in order to assist the court in deciding on an appropriate disposition for that child. 5 Wis. Leg. Counc. pt. 2, Research Report on Child Welfare, p. 112 (1955).
Each item of information requested by Judge Skow relates to a case within the continuing jurisdiction of the juvenile court. Judge Skow explained that he issued the order to get an "immediate update" on each child presently in the foster care system pursuant to a juvenile court dispositional order to make sure that each child was being adequately protected and served.[3] Judge Skow's request for information *499 appears to relate to his authority to review periodically the provision of services to a child placed pursuant to a permanency plan in the foster care system and to propose on his own motion a revision of a dispositional order or a change in placement of a child. Secs. 48.357(2m), 48.38(5)(a), 48.363, Stats. 1985-86.
Thus, insofar as each update on a particular child was to form the basis for Judge Skow's decision whether to propose a change in the placement of that particular child, Judge Skow was arguably within his statutory authority under sec. 48.08 (1) in issuing the order in this case. Construed in this way, the order arguably demanded the production of information within the scope of legitimate inquiry in cases before the juvenile court and demanded the information to assist in making a decisionwhether to propose a change in a dispositional orderthe judge was authorized by statute to make.

II.
Judge Skow, however, had other reasons for ordering the information in this case. He stated that he wanted to "figure out what in heaven's name makes this foster network tick, if anything, by way of responsible monitoring." Thus, it appears that Judge Skow planned to use the information he requested not just to assist him in making statutorily authorized decisions about particular children, but also to shed light on the functioning of the agency. This case thus presents the broader issue of what a judge of a juvenile court should do when confronted with information *500 raising doubts in that judge's mind about the adequacy of a county department's supervision of the foster care system. Once the judge discovers a problem which rises to a systemic level and involves the court's responsibilities under ch. 48 well as the functioning of an agency, I believe the judge should deal with the systemic problem through administrative channels rather than through a sua sponte order to the agency to produce information.
The tasks of the juvenile court and the agencies providing services in the juvenile court system are closely interwoven. In fact, these tasks are so closely interwoven that the dilemma of how to coordinate these tasks has engendered debate about whether "services" for the juvenile court should be provided by an arm of the court or by a separate executive agency.[4] The state legislature of Wisconsin has chosen to divide the administrative from the adjudicative tasks, placing the responsibility for the former in executive agencies. Conflict between the juvenile court and an *501 agency over services to children sometimes happens in such a system.[5]
When a judge of the juvenile court discovers potentially far-reaching systemic problems with the services provided by an agency with which the court must work, the American Bar Association (ABA) recommends that the judge act through court administrative channels to attempt to resolve the problem. The ABA also recommends that the judge consider pressing for improved agency services and facilities in a regular community forum that includes representatives from the agencies serving the court as well as representatives of the community. IJA-ABA Juvenile Justice Standards, Standards Relating to Court Organization and Administration, Commentary to 3.2, pp. 30-31; Commentary to 3.4 (L), p. 39; Standard 3.5 (2) (1980). This vision of the judge's role in urging improvement of agency services in the juvenile court *502 system accords with the Children's Code in Wisconsin. The Wisconsin statutes provide, for example, for the juvenile court to appoint an advisory board of citizens of the county. See sec. 48.11, Stats. 1985-86.[6] Use of court administrative channels, such as the chief judge of the district or the Director of State Courts, and an advisory board, may prevent the conflict that might otherwise ensure if every juvenile court judge in a county, each sincerely hoping to improve the performance of an agency, unilaterally issues orders to an agency.
I believe this court should, in the exercise of its superintending and administrative authority over all courts, Wis. Const. art. VII, sec. 3(1), encourage judges of juvenile court to use administrative channels, before sua sponte issuing judicial orders, to address a systemic problem posed by an agency which provides services to children within the jurisdiction of the juvenile court.
I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN joins in this opinion.
NOTES
[1] The order was issued in In the Interest of J.A., a person under the age of 18 years, case no. 84-JV-321, a CHIPS (child in need of protection or services) proceeding under ch. 48, Stats.
[2] Although not expressly stated the separation of powers doctrine is implicitly created by the following constitutional provisions:

"The legislative power shall be vested in a senate and assembly." Article IV, sec. 1, Wis. Const.
"The executive power shall be vested in a governor ...." Article V, sec. 1, Wis. Const.
"The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature ...." Article VII, sec. 2, Wis. Const.
"The supreme court shall have superintending and administrative authority over all courts." Article VII, sec. 3(1), Wis. Const.
"The chief justice of the supreme court shall be the administrative head of the judicial system and shall exercise this administrative authority pursuant to procedures adopted by the supreme court. The chief justice may assign any judge of a court of record to aid in the proper disposition of judicial business in any court of record except the supreme court." Article VII, sec. 4(3), Wis. Const.
[1] The majority's insistence that the judge's order be premised on the receipt of information during the processing of a particular case seems inconsistent with the majority's subsequent decision to remand the case despite the fact that Judge Skow no longer has jurisdiction over the case in which he issued the order. The court justifies remanding the "case" to Judge Skow on the grounds that the judge has continuing jurisdiction over other foster care placements in the county. If the judge's power to issue the order rests on his continuing jurisdiction over foster care placements, it makes no difference whether the judge received the information alerting the judge to the existence of a problem during the processing of a particular case.
[2] Judge Skow ordered:

"1. That Racine county is to provide the Court with the names of every child in Racine county presently in foster care. 2. That Racine county is to provide the Court with the names of all foster parents who are charged with the responsibility of caring for every child in foster care in Racine county. 3. That Racine county is to provide the Court with the names of the respective case managers for every child in foster care in Racine county. 4. That Racine county is to provide the Court with information detailing how long every foster parent in Racine county has been certified as a foster parent in any and all categories of foster care. 5. That Racine county is to provide the Court with information concerning the nature of each and every placement of foster children in Racine county in foster placement and if the child is in need of protection and services, the factual allegations that caused the child to be placed. 6. That Racine county provide the Court with the years of experience and nature of the experience in foster parenting for each foster parent in Racine county. 7. That Racine county provide the Court with the dates and types of training that was provided to all foster parents in Racine county, and the substance of all training and who provided said training. 8. That Racine county provide the Court with information concerning which foster parents of the foster parents in Racine county are related to the foster children, and what the relationship is. 9. That Racine county is to provide the Court with the dates of all contacts between the foster parents of Racine county and their foster children and the Human Services Department personnel monitoring the cases and the subject matter of that discussion, as well as the problems discussed and the remedial steps taken by the case manager in every case."
[3] I would not remand this case, as the majority does, for Judge Skow to state his reasons for issuing the order in the order itself. Judge Skow set forth his reasons on the record, although not in the order itself. It may be better practice, in the future, to set forth the reasons for the issuance of an order in the order itself, but this court can evaluate the judge's reasons on review.

The court's refusing to review Judge Skow's reasons in this case will not further the majority's stated goals of discouraging "the issuance of unnecessarily broad information requests" and facilitating "appellate review of the court's exercise of discretion." Opinion at pages 492-493. It is unfair to the circuit court judge and an inefficient use of judicial resources for this court to remand for a new order the reasons underlying the present order are set forth in the record. In addition, by not reviewing the reasons for the issuance of the order in this case, the court leaves the litigants in the case, the circuit courts, and future litigants without guidance as to what constitutes a valid reason for demanding information such as that demanded in the instant case.
[4] See generally, Keve, "Administration of Juvenile Court Services," in Justice for the Child: The Juvenile Court in Transition (Rosenheim ed. 1962); Rubin, "Court-Administered Youth Services: One-Step-Up for Due Process," Arthur, "Court Services: The Right Arm of the Juvenile Court," Milligan, "Judges and Commissioners: A Shotgun Marriage," Gilman, "The Constitutionality of Juvenile Court Administration of Court Services," Foster, "Courts as Social Service Agencies: An Idea Carried to Its Illogical Extension," all in Major Issues in Juvenile Justice Information and Training: Readings in Public Policy (Hall, Hamparian, Pettibone, and White, eds. 1981).

The American Bar Association has taken the position that the provision of services to children should be handled by an executive agency rather than the juvenile court. IJA-ABA Juvenile Justice Standards, Standards Relating to Court Organization and Administration, Standard 1.1 and Commentary (1980).
[5] See, e.g., State ex rel. Weinstein v. St. Louis County, 451 S.W.2d 99 (Mo. 1970) (upholding authority of juvenile court to prevent county authorities from interfering with its inherent authority to select, appoint, and compensate employees providing services to children within its jurisdiction); In the Interest of J.N., 279 So. 2d 50 (Ct. App. Fla. 1973) (holding that juvenile court exceeded its authority in ordering Division of Youth Services to transfer a youth in its care to a state training school rather than a halfway house); In re Welfare of Lowe, 89 Wash. 2d 824, 576 P.2d 65 (1978) (holding that juvenile court may not impose specific requirements on executive agencies providing services to child but may require prior notice of specified actions by such agencies); Matter of L., 546 P.2d 153 (Ct. App. Ore. 1976) (court upholds juvenile court's authority, under certain circumstances, to require an agency to provide specific treatment for a child or to certify to the juvenile court that it is unable to provide such treatment, but denies juvenile court's authority to compel an agency to expend funds which the agency claims are not available).
[6] Cf. Report of the National Advisory Committee for Juvenile Justice and Delinquency Prevention: Standards for the Administration of Juvenile Justice, 1.111 & 1.113 (Dept. Justice, July 1980) (recommending the establishment of planning authorities to coordinate efforts of different entities providing services to children); Weiner, One Approach to the Problem of Inter-Agency Communication and CooperationThe Family Court Advisory Committee, 31 Juv. & Fam. Ct. J. 45 (August 1980).