Stanley R. SMITH, Claimant
(Respondent/Appellant/Respondent),

v.

THIRTY–SEVENTH JUDICIAL
CIRCUIT OF MISSOURI,
Employer,

and

State of Missouri, Employer
(Respondent/Respondent/Respondent),

and

Carter County, Oregon County, and
Shannon County, Employers (Appellants/Respondents/Respondents),

and

Howell County, Employer
(Respondent/Respondent/Appellant).

No. 74929.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1993.

Bradley Spaunhorst, St. Louis, for Oregon, Carter and Shannon Counties.

Manuel Drumm, Sikeston, for Howell County.

William Swain Perkins, Thayer, William L. Webster, Atty. Gen., Jefferson City, Stephen F. Gaunt, Sp. Asst. Atty. Gen., Rolla, for State of Missouri.

BENTON, Judge.

Who is the employer, for workers' compensation purposes, of a chief deputy juvenile officer? On appeal of the workers' compensation claim, the Labor and Industrial Relations Commission (LIRC) found that the 37th Judicial Circuit was Stanley R. Smith's employer, and was itself liable for the workers' compensation payment. After opinion by the Court of Appeals, Southern District, this Court granted transfer. *Rule 83.03.*

■ By the record, the circuit court is clearly Smith's employer—a fact fully according with relevant statutes and decisions. This "employer" is unique, coordinating a mix of state and county funding. The issue is which funding sources are available to pay workers' compensation for a chief deputy juvenile officer. In view of its hybrid funding, a judicial circuit may tap either state or county sources for the workers' compensation of a chief deputy

juvenile officer, in accordance with state statutes. *Sections 50.640, 50.641, 105.810 RSMo Supp.1992, 105.820.*

### I.

The 37th Judicial Circuit is Smith's employer, in the normal sense of the word. The facts of this case demonstrate that Smith is subject to the exclusive control of the 37th Judicial Circuit. When originally hired, Smith was interviewed by the Chief Juvenile Officer of the Circuit and by the Circuit Judge. In performing his duties, Smith is subject to the direction of the Chief Juvenile Officer, the Circuit Judge, and the Associate Circuit Judges of that circuit—all state officials. If Smith were fired, the Chief Juvenile Officer would notify him. He has never received any instructions regarding his duties from any county official, and he would ignore them if given.

His salary comes in four separate checks, one from each county of the circuit. The state reimburses the counties for his salary, but not for any fringe benefits. Smith receives no fringe benefits—no medical, health, or life insurance, nor any retirement benefits. The only even arguable "benefits" Smith receives are financed by his salary—vacation, compensatory time for overtime, and sick leave. Smith submits his expenses to the Chief Juvenile Officer, who forwards them to the Circuit Judge, who arranges reimbursement by the four counties. Smith's salary and expenses are allocated in proportion to population: Howell County, 55.02%; Oregon County, 19.55%; Shannon County, 15.06%; and Carter County, 10.37%. The four counties included Smith's salary along with county employees and paid the resulting premium for workers' compensation insurance.

■ The law is as compelling as the facts that the 37th Judicial Circuit is Smith's employer. Smith is appointed by the Juvenile Division of the Circuit Court. *Sections 211.351, 211.021(3)*[1]. Smith serves "under the direction of" the Juvenile Division. *Sections 211.351, 211.401.* Smith's employment is "at the will of the

1. All statutory references are to RSMo 1986    unless otherwise indicated.

juvenile court and he was subject to removal at any time by the judge, with or without cause." *Williams v. Jones*, 562 S.W.2d 391, 396 (Mo.App.1978). "[T]he number, compensation, selection and control of juvenile court employees is within the inherent power of the court." *State ex rel. St. Louis County v. Edwards*, 589 S.W.2d 283, 289 (Mo. banc 1979).

The LIRC's finding of fact that "the claimant is an employee of the 37th Judicial Circuit" may, at any rate, be "conclusive and binding" on this Court. *Section 287.-495.1.* To the extent this finding includes "questions of law," it accords with the law. *Id.*

## II.

■ The parties dispute whether the 37th Judicial Circuit can be an employer for workers' compensation purposes. *Section 287.030.1(2) RSMo Supp.1992* lists public entities that are "employers" under workers' compensation. From this list, the parties focus on three potential employers for Smith: (1) the state, (2) the counties, and (3) "any other political subdivision." The LIRC—and the court of appeals in *Hill v. 24th Judicial Circuit*, 765 S.W.2d 329, 331 (Mo.App.1989)—concluded that circuit courts are political subdivisions, and thus a potential "employer" for workers' compensation.

■ Circuit courts are not political subdivisions. None of the statutes or constitutional provisions that define political subdivisions include circuit courts. *See, e.g., Mo. Const. Art. X, § 15; § 44.010(6); § 67.750; § 70.210 RSMo Supp.1992; § 115.013(18).*

Instead, circuit courts are constitutional entities:

> The judicial power of the state shall be vested in a supreme court, a court of appeals ..., and circuit courts. *Mo. Const. Art. V, § 1.*

Circuit courts exercise the judicial power "of the state." *Id.* It is the "state" that is divided into circuits for the administration of justice. *Mo. Const. Art. V, § 15; § 478.167* (37th Judicial Circuit). The "state" does qualify as an employer under

*§ 287.030.1(2) RSMo Supp.1992.* This term encompasses all of the departments of the state government, including the judiciary.

While circuit courts are part of state government, their funding differs dramatically from most state agencies. Significant circuit-court funding comes from the State. *See, e.g., § 211.393 RSMo Supp.1992* (salary of chief juvenile officer); *§ 478.023* (salaries of circuit judges and associate circuit judges); *§ 483.083.4 RSMo Supp.1992* (salaries of circuit clerks); *§ 483.245* (salaries of deputy circuit clerks); *§ 485.010* (salaries of presiding judge's staff); *§ 485.060* (salaries of court reporters).

Another significant source of circuit court funding is the county through the County Budget Law. *Sections 50.640, 50.-641.* All expenditures of circuit courts, except as otherwise provided by law, shall be paid from the relevant county treasury. *Section 476.270.*

It is the circuit court that coordinates payment for the costs of the circuit court. This case poses the issue: to what extent can the circuit court look to the state for workers' compensation coverage.

## III.

■ Workers' compensation must cover "all state employees." *Section 105.810 RSMo Supp.1992.* State employees within the "judicial branch of government" are part of state government, and must be covered by workers' compensation, like other state employees. *Section 105.820.*

Is Smith a state employee for workers' compensation coverage? A specific statute defines "state employee" for workers' compensation:

> The term *"state employee"* means any person who is an elected or appointed official of the state of Missouri or who is employed by the state and earns a salary or wage in a position normally requiring the actual performance by him of duties on behalf of the state. *§ 105.800.*

The parties dispute whether Smith is a state employee or a county employee under this statute.

The specific statute defining "state employee" for workers' compensation does include Smith. Smith was "appointed" to his position by state officials. Smith earns a salary (the statute being silent as to the nominal payer). Smith is in a position requiring that he perform "duties on behalf of the state."

Determining whether a particular employee is a state employee depends on the precise language of the particular statute involved and the general principles in the relevant area of law. *Cates v. Webster*, 727 S.W.2d 901, 906 (Mo. banc 1987); *O'Leary v. Missouri State Board of Mediation*, 509 S.W.2d 84, 89 (Mo. banc 1974); *Hawkins v. Missouri State Employees Retirement System*, 487 S.W.2d 580, 583 (Mo. App.1972). In the *Cates* case, the relevant statute did not define the term "officer or employee of the state or any agency thereof," and this Court held a court bailiff was not a state employee, for purposes of the State Legal Expense Fund. *Cates*, 727 S.W.2d at 904, 906. In the *Hawkins* case, the relevant statute mirrored *§ 105.800*, and the court of appeals held that an official court reporter was a state employee, for purposes of the Missouri State Employees Retirement System. *Hawkins*, 487 S.W.2d at 581–82.[2]

Reinforcing the specific language of *§ 105.800*, the general principles of law in workers' compensation indicate Smith can be a state employee. In workers' compensation law, the "one making the appointment and receiving the services necessarily stands in the correlative relation of employer." *Maltz v. Jackoway–Katz Cap Co.*, 336 Mo. 1000, 82 S.W.2d 909, 911 (1934). The right to control the employee is the "test often applied" to determine the employer, and the element "most frequently referred to." *Lawson v. Lawson*, 415 S.W.2d 313, 319 (Mo.App.1967); *Cates*, 727 S.W.2d at 906. "[T]he framers of the [workers' compensation] act had in mind the law of master and servant and the relationship, duties, rights, and limitations

arising out of the same. The relationship is bottomed upon services ... to be rendered by the servant ... to the other ... and is peculiarly characterized by right of control vested in the latter." *Maltz*, 82 S.W.2d at 912. Based on traditional workers' compensation law, Smith can be a state employee.

After all, workers' compensation substituted statutory rights for the employee's tort action against the employer. For any accident "arising out of and in the course of employment," the employer is liable "irrespective of negligence," and shall be "released from all other liability." *Section 287.120.1 RSMo Supp.1992.*

The state argues that the nominal payers of the salary—the counties—are the employers. The plain language of *§ 105.-800* does not mention, let alone emphasize, the source of the salary or the nominal payer. Reading this statute *in pari materia* with workers' compensation law, it is the right of control and not the source of funds that determines who is the employer.

[W]hile payment of wages is a circumstance which may aid in determining who is the employer, such payment of itself is insufficient to establish that fact. It is merely useful in determining who has the power of control, which latter is the controlling consideration. *Ellegood v. Brashear Freight Lines, Inc.*, 236 Mo. App. 971, 162 S.W.2d 628, 634 (1942).

In this case, to the extent that payment is relevant, county payment is negated by state reimbursement of Smith's entire salary, and complete judicial control. As Smith is subject to judicial and, thus, state control, he can be a "state employee" for workers' compensation purposes.

*IV.*

The various parts of the state government have the option to purchase insurance or to join the state self-insurance pool, CARO. *Sections 105.810 RSMo Supp. 1992, 105.820.* When this option is combined with the County Budget law, *§§ 50.-*

---

**2.** The General Assembly has the power to exempt classes of employees from this position-by-position/program-by-program approach, and make a class either state employees or county employees for all purposes. *See, e.g., § 483.-083.4 RSMo Supp.1992; § 483.245.6.*

*640, 50.641*, the circuit courts have three options as to workers' compensation.

First, the circuit court can request funds from its component counties in order to purchase insurance. The 24th Judicial Circuit apparently implemented this option in *Hill*, 765 S.W.2d at 330–31.

Second, workers' compensation can be supplied directly by the counties. State statutes expressly permit a "state employee" of a judicial circuit to be, in effect, designated a "county employee" for workers' compensation purposes. *Sections 50.-640, 50.641, 105.810 RSMo Supp.1992, 105.-820.* Smith's insurance appears to have been provided this way.

Third, the circuit court could choose to self-insure (through CARO) its "state employees." *Sections 105.810 RSMo Supp. 1992, 105.820.*

As workers' compensation coverage clearly constitutes "expenditures to support the operations of the circuit court," the choice between these options is for the circuit court. *Section 50.641; cf. State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 477 (Mo. banc 1992). This choice is a result of the same process as all other circuit court budgetary matters. *Section 50.640.2.*

In the present case, the parties apparently selected the second option. The counties and their workers' compensation insurers are liable for Smith's claim.

### V.

Smith is an employee of the 37th Judicial Circuit, and can be a "state employee" for workers' compensation purposes. The mechanism to fund Smith's workers' compensation is the budget process of the circuit court, with the option of CARO for those circuit court employees who are "state employees." In this case, because the counties (and their insurers) have covered Smith at the end of the budgeting process, they, at least, are liable for his workers' compensation claim.

The judgment of the LIRC is affirmed in part and reversed in part; the case is re-manded to the LIRC for entry of an amended award in accordance with this opinion.

COVINGTON and THOMAS, JJ., and SHANGLER, Sp.J., concur.

PRICE, J., concurs in result in separate opinion filed.

ROBERTSON, C.J., and LIMBAUGH, J., concur in opinion of PRICE, J.

HOLSTEIN, J., not sitting.

PRICE, Judge, concurring in result.

I concur in the result reached by the majority. I also agree that this result may be reached simply because the counties comprising the 37th Judicial Circuit have actually purchased workers' compensation insurance for Smith. I do not, however, agree with the path of dicta taken by the majority along the way.

The principal opinion focuses almost exclusively upon the issue of control and ignores prior precedent and statutory law that require a more thorough and demanding analysis. This Court's recent decision in *Cates v. Webster*, 727 S.W.2d 901 (Mo. banc 1987), is cited without discussion as supporting the majority's reasoning. In fact, *Cates* mandates an examination of the relevant statutory scheme to determine whether the General Assembly intended that a particular circuit court employee receive the benefit in question from the state. In this case, the legislative intent revealed by the statutes that govern the chief deputy juvenile officer position, coupled with an ambiguous statutory definition, lead to the conclusion that the state of Missouri did not choose to be responsible for Smith's workers' compensation benefits.

Admittedly, in the ordinary workers' compensation case an employer-employee relationship is shown if the employer has the right to control the means and manner of the employee's service. *Howard v. Winebrenner*, 499 S.W.2d 389, 395 (Mo.1973). Our decisions, however, make it clear that the control test is *not* always determinative:

In other contexts it is often observed that the test usually applied to determine

the existence of a master-servant relationship is the right of control, (*citations omitted*); however, it is clear that the term "employee" may have different meanings in different connections. (*Citations omitted.*) *Cates*, 727 S.W.2d at 906; *accord Coy v. Sears, Roebuck & Co.*, 363 Mo. 810, 253 S.W.2d 816, 818 (1953). This is especially true when the putative "employer" is a judicial circuit.

The circuit courts occupy a unique position in our scheme of government. The court has the inherent authority to select, appoint, and control its own staff. *State ex rel. St. Louis Cty. v. Edwards*, 589 S.W.2d 283, 288–9 (Mo. banc 1979); *State ex rel. Weinstein v. St. Louis Cty.*, 451 S.W.2d 99, 102 (Mo. banc 1970). This inherent authority is derived from the constitutional separation of the powers of government into three distinct departments. *Mo. Const.* art. II, § 1; *Weinstein*, 451 S.W.2d at 101.

It must be understood, however, that the court's authority to control its own employees does not include either the obligation or the ability to compensate them. Judicial employees cannot be paid directly from court funds, as the court has minimal or no money of its own and no taxing power to generate funds.[1] Accordingly, some circuit court "employees" are paid by the state, while others are paid by the counties comprising the circuit in which the court is located.

As a result of this situation, persons who work for the circuit courts have been deemed to be "employed" by different entities for different purposes. When the issue presented to the reviewing court concerns the conditions of employment or duties of circuit court personnel (matters that implicate the court's control over its own internal workings), those persons are considered to be judicial employees. *See Edwards*, 589 S.W.2d at 288–9; *Weinstein*, 451 S.W.2d at 102; *Circuit Court of Jackson Cty. v. Jackson Cty.*, 776 S.W.2d 925, 927 (Mo.App.1989). This conclusion is essential to the preservation of the judicial department's autonomy under our system of government.

On the other hand, when the underlying controversy requires a determination of the *status* of a class of circuit court personnel in relation to a given issue, our courts have looked to the legislative intent evidenced in the relevant statutory scheme. *See Cates*, 727 S.W.2d at 905–6; *State ex rel. O'Leary v. Missouri State Bd. of Mediation*, 509 S.W.2d 84, 89 (Mo. banc 1974); *Hawkins v. Missouri State Employees' Retirement System*, 487 S.W.2d 580, 582–3 (Mo.App. 1972). The present case fits squarely within this latter classification.

> For purposes of workers' compensation: [T]he term "state employee" means any person who is an elected or appointed official of the state of Missouri or who is employed by the state and earns a salary or wage in a position normally requiring the actual performance by him of duties on behalf of the state.

*Section 105.800.*

Unfortunately, this definition is not very helpful because it begs the question (a "state employee" is a person "employed by the state" or who performs duties "on behalf of the state"). The principal opinion simply assumes that *§ 105.800* applies to all employees of the judiciary, citing *§ 105.820*, and finds this result in accord with the general principles of law in workers' compensation. But because the circuit courts are *sui generis*, the applicability of the *§ 105.800* definition to a specific circuit court employee cannot be taken for granted.

In fact, the statutes that govern the compensation of circuit clerks, deputy circuit clerks, and division clerks expressly make the status of these employees contingent upon the source of their compensation. Those clerks who are paid directly by the state of Missouri "shall be considered state

---

**1.** A circuit court has the authority to fix the compensation for those employees it deems to be reasonably necessary to carry out its own functions. *Weinstein*, 451 S.W.2d at 102. Nonetheless, the actual monies required to pay such compensation must in fact come from the county or the state.

employees for all purposes", whereas those who are paid by a city or county "shall not become state employees," even though the state reimburses their salaries to the city or county. *Section 483.083.4*, RSMo Supp. 1992; *§ 483.245.6*. In reconciling this legislative directive with its announced rule, the majority notes that the General Assembly has the power to exempt classes of employees from the position-by-position approach. Principal opinion, n. 6. That statement is undoubtedly true; however, this Court has previously used those same statutes as evidence of the legislative intent in allocating financial responsibility for circuit court employee benefits between the state and the counties.

In *Cates,* the Court had to decide whether a bailiff in a division of the circuit court is a state employee for purposes of the State Legal Expense Fund, *§§ 105.711 et seq.* 727 S.W.2d at 905. Lacking an applicable statutory definition, the Court found it "significant that elsewhere [in *§§ 483.083* and *483.245*] the legislature has made the designation of certain judicial personnel as state employees dependent upon their being paid by the state." *Id.* at 905. Applying this rule to the facts of the case, the Court concluded that the bailiff is not a state employee:

> [A]ppellant is, in the context of § 105.-711.2(2), an employee of Jackson County because it is the county that pays his salary and provides his employee benefits. We need not decide whether appellant might be considered a state employee for other purposes.

*Id.* at 906; *accord, Hawkins,* 487 S.W.2d at 582–3 (further evidence that a court reporter is a state employee for purposes of the Missouri State Employees' Retirement System is the fact that part of the reporter's salary is paid directly by the state by means of a state check).

In the case at bar, each of the four counties comprising the 37th Circuit issues Smith a monthly check for its pro rata share of his total compensation (salary and expenses). *Sections 211.351.2, 211.393.2,* RSMo Supp.1992. Each county, in turn, is reimbursed by the state for its share of Smith's salary only.[2] *Section 211.393.3,* RSMo Supp.1992. The maximum state contribution to Smith's salary is set by *§ 211.-381.1(2),* although the counties may choose to pay a larger salary out of their own funds. *Section 211.394.1,* RSMo Supp. 1992. Significantly, the state's reimbursement scheme "exclud[es] all fringe benefits for such personnel." *Section 211.393.6,* RSMo Supp.1992. In compliance with the statutory mandate, Smith does not receive any benefits such as health insurance, life insurance, or retirement benefits from the state.

In my opinion, the statutory scheme for the compensation of juvenile court employees evidences the General Assembly's intention that only those employees whose salaries are paid *directly* by the state are state employees for workers' compensation purposes. Conversely, the requirement that the counties pay the salary, expenses, and fringe benefits of all other employees (including the chief deputy juvenile officer), with partial state reimbursement of their salaries only, evidences a legislative intent that such employees shall not be deemed to be state employees.[3]

This interpretation provides continuity with our earlier decisions and is in harmony with the statutes that mandate workers' compensation coverage for state employ-

---

**2.** The salary of the juvenile officer is paid directly by the state. *Section 211.393.2,* RSMo Supp. 1992. On August 13, 1988, the state began reimbursing to the counties the salary of the chief deputy juvenile officer (Smith's position) and one deputy juvenile officer, class 1. *Section 211.393.3,* RSMo Supp.1992. It also began reimbursing an increasing percentage of the salaries of all other juvenile court staff, starting at five percent on January 1, 1989, and rising to fifty percent on January 1, 1998. *Section 211.393.4,* RSMo Supp.1992.

**3.** This conclusion is supported by the statute directing that the circuit clerk of the city of St. Louis, the circuit clerk of St. Louis County and the court administrator of Jackson County "shall not become state employees" even though the state pays the city and counties "an amount which is equivalent to a circuit clerk's salary." *Section 483.083.4,* RSMo Supp.1992. This provision signals the General Assembly's intent that mere *reimbursement* of a court employee's salary is insufficient to bestow the status of state employee on that employee.

ees. The General Assembly extended the provisions of the Workers' Compensation Law to all state employees in 1969. L.1969, p. 187 § 1. This provision, however, did not affect those employees of any department or constitutional agency who were already covered by workers' compensation. *Id.* p. 188 § 4. Thus, the statutory scheme from its inception contemplated the possibility that some persons employed by a department of the state might receive workers' compensation benefits through a provision other than *§ 105.800.*

I would hold that Smith is not a state employee for purposes of workers' compensation because the state merely reimburses the amount of his salary to the counties he serves. The statutory compensation scheme evidences the legislature's intention that the counties comprising the 37th Circuit shall be responsible for Smith's subsidiary expenses, including his workers' compensation benefits.[4]

I would affirm the commission's ruling that Smith is not a state employee and that the state of Missouri is not liable for his workers' compensation benefits. I would reverse its ruling that Smith is an employee of the 37th Judicial Circuit for workers' compensation purposes and that the circuit is liable for his benefits. Because I would hold that Smith is the employee of the four counties comprising the circuit for workers' compensation purposes, I concur in the majority's holding that the counties and their insurers are responsible for his claim.

---

**4.** At the very least, the statutory exclusion of fringe benefits from the amount that is reimbursed to the counties makes it clear that the state did not intend to be responsible for any of Smith's benefits, including workers' compensation insurance.