Donna RAU, Appellant,

v.

ST. LOUIS COUNTY EMPLOYEES' RETIREMENT PROGRAM, Respondent.

No. ED 79605.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 19, 2002.

Mark E. Goodman, St. Louis, MO, for Appellant.

Christopher J. McCarthy, St. Louis, MO, for Respondent.

GEORGE W. DRAPER III, Judge.

Donna Rau (hereinafter, "Employee") appeals from the circuit court's judgment affirming the decision of the Board of Trustees of the St. Louis County's Employees' Retirement Plan (hereinafter, "the Board") denying her credited service in the St. Louis County Retirement Plan (hereinafter, "the Plan") prior to July 1, 1980. Employee claims the Board erred in denying her credited service because she was a qualified St. Louis County employee for the period in question. We affirm.

St. Louis County Juvenile Court hired Employee as a federal grant employee on February 7, 1972. Federal grant employees were hired by the presiding judge of the juvenile court subject to the approval of the court en banc. A juvenile court employee processed the federal grant employees' payroll checks. By contrast, St. Louis County processed the juvenile court payroll checks for all employees not paid under the federal grant program. As a federal grant employee, Employee did not make any contributions to the Plan and did not receive any payment from the Plan when it ceased to be contributory.[1] Employee remained in her capacity as a federal grant employee until July 1, 1980, performing various functions for the juvenile court as a deputy juvenile officer.

On July 1, 1980, Employee transferred from the federal grant position to the position of Director of Research and Evaluation, a nonfederal grant position. Employee was placed on the St. Louis County payroll and completed a Plan Membership Record Form. Employee did not claim any former employment with St. Louis County on the Plan Membership Record Form.

Employee announced her intention to retire on June 6, 2000, contingent upon the Board granting her credited service[2] for the period from February 7, 1972 until July 1, 1980 and Rule of Eighty[3] benefits from February 7, 1972 until June 6, 2000. The Board denied her request stating her age plus years of credited service did not equal or exceed eighty. A full hearing followed. After the hearing, the Board issued its Findings of Fact, Conclusions of Law and Decision on July 27, 2000, denying Employee's claim. Employee petitioned for review by the St. Louis County Circuit Court, which affirmed the Board's decision. Employee appeals.

---

1. Prior to the date Employee began working for the Juvenile Court as a federal grant employee until June 1977, the Plan required participants to pay a percentage of their salaries to fund the Plan. In June 1977, the Plan became noncontributory and participants received a refund of one hundred percent of their contributions to the Plan.

2. St. Louis County, Mo. Ordinance 8294 Section 204.070 (June 24, 1977) defines credited service, which "shall mean the period of continuous County employment from the first day of the month next following the date of com-

mencement of such continuous full-time employment prior to March 1, 1967, excepting the first full six months of such continuous employment...."

3. St. Louis County, Mo. Ordinance 15,267 Section 204.115 (November 29, 1990) defines the Rule of Eighty Retirement Date as "the first day of any month coinciding with or next following the date upon which the sum of the participant's age and credited service equals or exceeds eighty (80)."

When reviewing an agency's decision, the court's task is to determine only whether the administrative decision is supported by competent and substantial evidence on the whole record; whether the decision was arbitrary, capricious or unreasonable; or whether the administrative action constituted an abuse of discretion. *Firetek, Inc. v. St. Louis County,* 44 S.W.3d 904, 906 (Mo.App. E.D.2001). The evidence is considered in the light most favorable to the administrative agency's finding, together with all favorable inferences supporting it. *Bollinger v. Wartman,* 24 S.W.3d 731, 733 (Mo.App. E.D. 2000). However, when the decision of the administrative agency involves the interpretation of law and application of the law to undisputed facts, this Court must form its own independent conclusions and is not bound by the interpretation of the hearing examiner. *Missouri Com'n on Human Rights v. Red Dragon Restaurant, Inc.,* 991 S.W.2d 161, 165 (Mo.App. W.D.1999).

Employee's sole point on appeal challenges the Board's denial of retirement benefits because she claims pursuant to St. Louis County ordinances she was a participant in the Plan during the period in question by virtue of her being a salaried employee of the St. Louis County Juvenile Court. Both parties rely on *State ex inf. Anderson v. St. Louis County,* 421 S.W.2d 249 (Mo. banc 1967) (hereinafter, *"Weinstein I"*) and *State ex rel. Weinstein v. St. Louis County,* 451 S.W.2d 99 (Mo. banc 1970)(hereinafter, *"Weinstein II"*). Further, the Board claims that the juvenile court is bound by the stipulation of settlement entered in *Kathryn Arnold, et al., v. Cary Ashley, et al, and St. Louis County,* No. 315–196 (Cir.Ct. Nov. 24, 1971) which excludes federal grant employees from participating in the Plan.

In *Weinstein I,* Judge Noah Weinstein of the juvenile court prepared and submitted to St. Louis County budget officials the estimates for the juvenile court's requirements for the year 1967. *Id.* at 251. Prior to submission to the budget officer, these budget estimates were approved by the circuit court en banc. *Id.* The budget officer then made several reductions in these estimates, which subsequently were approved by the County Council. *Id.* The budget officer also informed the juvenile court that all juvenile court employees were under the St. Louis County merit system and that the civil service commission had the responsibility to control all phases of personnel administration regarding those employees. *Id.* at 252.

Judge Weinstein asserted that the court had the authority to employ, discharge, and fix the salary of the juvenile court employees, and that neither the budget officer or the County Council had any authority to change the budget estimates of the juvenile court without its consent. St. Louis County argued that the inherent power of the circuit court to do things necessary to preserve its functions did not extend to expenditures for personnel involved in judicial administration. Moreover, it argued that the juvenile court employees were employees of St. Louis County and subject to the county's merit system. *Id.* at 252.

*Weinstein I* resolved the budget dispute by holding that Section 50.640 RSMo (1959) applied to St. Louis County. Section 50.640 states in part: "[t]he budget officer or the county court shall not change the estimates of the circuit court .... without the consent of the circuit court." These budgets were construed to include expenses for all the various activities of the juvenile court as well. *Id.* at 253. Therefore, the budget officer improperly reduced the juvenile court's budget and needed the consent of the juvenile court before doing so. *Id.* at 252.

To resolve whether juvenile court employees were employees of St. Louis County, *Weinstein I* looked to several statutes, constitutional provisions and the St. Louis County Charter. The Missouri Supreme Court held that the personnel provided for the assistance of the juvenile court were not judicial officers, but were employees of St. Louis County. *Id.* at 255. The Court then articulated that the juvenile court could provide for additional personnel, may request compensation, and make estimates for expenses that could not be altered without the consent of the juvenile court, and that the juvenile court employees were subject to the merit system. *Id.*

Three years later the juvenile court and St. Louis County disagreed as to who had the power to select and control the personnel serving various departments of the juvenile court, who could determine the number of employees serving these departments, and who fixes their compensation. *Weinstein II*, 451 S.W.2d at 101. The Missouri Supreme Court held that within the inherent power of the juvenile court "is the authority to select and appoint employees reasonably necessary to carry out its functions ... and to fix their compensation." *Id.* at 102.

Less than a year later, the juvenile court and St. Louis County once again disagreed about the selection, compensation, and participation of juvenile court employees in the Plan and litigation commenced. *See Arnold, supra.* This dispute was resolved by way of a Stipulation for Dismissal that was entered on November 24, 1971, and became effective January 1, 1972. The stipulation specifically states:

> All employees of the St. Louis County Juvenile Court and Lakeside Center for Boys will be reinstated in the St. Louis County employees' pension program. This agreement and stipulation specifically excludes employees hired by the Juvenile Court under Federal grant programs....
>
> All ordinances, rules and regulations relating to the question of the retirement plan not specifically herein altered, amended or overruled, shall remain in full force and effect, and shall be effective in the future operation of the plan....

The stipulation further recognized that "St. Louis County Circuit Court en Banc or any individual Judge does not lose any of its inherent rights or his [sic] inherent right as defined in *Weinstein v. St. Louis County*, 451 S.W.2d 99." Employee was not a party to the litigation since she commenced employment on February 7, 1972.

Employee points out that she performed similar tasks to other juvenile officers who were not federal grant employees, received a portion of her salary from St. Louis County, and according to *Weinstein I*, she was part of the "personnel provided for the assistance of the Court." *Weinstein I*, 421 S.W.2d at 255. As a result, she argues she was a participant in the Plan throughout the duration of her employment and as such, entitled to receive credited service from February 7, 1972 until June 2000. Employee argues that *Weinstein I* controls in its assertion that juvenile court employees are employees of St. Louis County, and it is irrelevant that part of her salary was paid with federal grant funds. The Board argues that after the *Arnold* settlement, the juvenile court exercised its authority granted in *Weinstein II* to set the compensation of its employees by making specific provisions for including many of its employees in the Plan. However, the juvenile court specifically excluded federal grant employees from participating in the plan. Thus, the Board argues that Employee was ineligible and did not participate in the Plan from February 7, 1972 until she became an Administrative Officer and placed on the St. Louis County payroll in July 1980.

We find the Board's decision to be persuasive in this case. The *Arnold* settlement explicitly excluded all federal grant employees from participating in the Plan. Employee conceded in her brief and during oral argument that she was hired as and remained a federal grant employee from February 1972 until July 1980. As a federal grant employee, Employee's payroll checks were not drawn from the St. Louis County payroll, and she did not in fact participate in the Plan. Moreover, Employee did not make any contributions to the Plan for over five years after she started working for the juvenile court. When the plan ceased to be contributory in 1977, Employee did not receive any payment from the Plan as other Plan members did. Even after the plan became noncontributory, Employee still did not participate in the Plan because she was not on the St. Louis County payroll. There were no St. Louis County payroll records for Employee during the period of February 1972 until July 1980 when she was a federal grant employee. Further, Employee did not claim any previous employment with St. Louis County on her hiring forms when she became a nonfederal grant employee in July 1980.

Based on the foregoing, we find that Employee was not a salaried County employee from February 7, 1972 until July 1, 1980. We point out that Employee has not been denied all retirement benefits from the Plan. She maintains credited service from July 1, 1980 when she became an Administrative Officer. We affirm the judgment of the trial court affirming the Board's decision denying Employee credited service for this time period.

MARY R. RUSSELL, J., and MARY K. HOFF, J., concur.